F. T. BEDFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112750. Promulgated December 22, 1943.

*Holt S. McKinney, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

**1194**

## OPINION.

Harron, *Judge*: The first question for determination is whether the new preferred stock of the Terminal Co. was received by the trustee during the taxable year as part of a nontaxable reorganization under section 112 (b) (3) of the Internal Revenue Code.[1]

Although the trustee was not a stockholder of the Terminal Co., petitioner contends that the stock of that company was received under a single plan for the reorganization of both the Terminal Co. and the Buildings Co. and that the Terminal Co. was a "party to the reorganization" of the Buildings Co. He argues that the Terminal Co. must be a party to the reorganization of the Buildings Co., since it owned all the common stock of the Buildings Co., and that, in view of the close relationship between the two companies and their common problems, neither company could have been reorganized without the other under section 77 (B) of the Federal Bankruptcy Act. His contention is that the trustee received new preferred stock of the Buildings Co. and new preferred stock of the Terminal Co. in a nontaxable exchange for the old preferred stock of the Buildings Co.

Respondent contends that the reorganizations of both companies under section 77 (B) were separate and distinct from each other, even though they were approved under a single plan. He claims that the Terminal Co. was not a party to the reorganization of the

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*     \*     \*     \*     \*     \*     \*

  (b) EXCHANGES SOLELY IN KIND.—

  (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

Buildings Co. under the statute [2] or in the generally accepted meaning of the term. His contention is that the preferred stockholders of the Buildings Co. received the new preferred stock of the Terminal Co. as general creditors of that company for releasing the Terminal Co. from its guaranty of the preferred stock of the Buildings Co. We think his contention must be sustained.

There can be little doubt that both companies were necessary parties to the proceeding for reorganization of the other. In addition to certain intercompany financial questions which had to be decided, the bankruptcy court in the reorganization of the Buildings Co. was required to consider the rights of the Terminal Co. as the owner of all the common stock of the Buildings Co. In the reorganization of the Terminal Co. the court had to consider the rights of the preferred stockholders of the Buildings Co., who were general creditors of the Terminal Co. under that company's guaranty of Buildings Co. preferred stock. It was for these reasons that both companies were reorganized at the same time in a consolidated proceeding. However, the rights of the stockholders and creditors of each company were separately considered and determined, so that, in effect, each company was reorganized under its own plan. In the reorganization of the Buildings Co. under section 77 (B) the preferred stockholders received new preferred stock in lieu of their old preferred stock. The Buildings Co. received payment of certain indebtedness owned by the Terminal Co. and the ownership of certain assets which had been claimed by the Terminal Co. was confirmed in the Buildings Co. Claims of general creditors of the Buildings Co. were paid in cash. In the reorganization of the Terminal Co. its financial structure was recapitalized, and the preferred stockholders of the Buildings Co. received new preferred stock of the Terminal Co. in consideration of the release of the Terminal Co.'s guaranty of the preferred stock of the Buildings Co. Each reorganization, however, was separate and distinct from the other.

Although the Terminal Co. was interested in the reorganization of the Buildings Co. in several different ways, it was not a party to the reorganization of the Buildings Co. as that term is defined in the statute or illustrated in *Groman* v. *Commissioner*, 302 U. S. 82. The term "a party to a reorganization" as defined by section 112 (g) (2) of the Internal Revenue Code includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of the

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

* * * * * * *

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

* * * * * * *

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

stock or properties of another. The Terminal Co. was not a corporation "resulting from a reorganization" of the Buildings Co. It did not acquire stock of the Buildings Co., nor was its stock acquired by the Buildings Co. If the Terminal Co. and the Buildings Co. had actually merged or consolidated, or had agreed to convey their stock to a new corporation in exchange for its stock, both of these companies, as well as the new company, would have been parties to the reorganization. However, the mere fact that the Terminal Co. owned all the common stock of the Buildings Co. does not make it a party to the reorganization of the Buildings Co. within the intent and meaning of section 112 (b) (3) of the Internal Revenue Code.

Petitioner also contends that even though it be held that the Terminal Co. was not a party to the reorganization of the Buildings Co. and that both companies were separately reorganized, still the right to receive the arrears of dividends from the Terminal Co. was a "security" within the meaning of section 112 (b) (3) so that the new preferred stock of the Terminal Co. was received in exchange for "securities" of the Terminal Co. In support of this contention he relies on *Skenandoa Rayon Corporation*, 42 B. T. A. 1287; affd., 122 Fed. (2d) 268; *South Atlantic Steamship Line*, 42 B. T. A. 705; *J. Weingarten, Inc.*, 44 B. T. A. 798; and the *Humphryes Manufacturing Co.*, 45 B. T. A. 114. These cases, however, are not in point since essentially different facts were involved. In the *Skenandoa Rayon Corporation* case, which is typical of the cited cases, the taxpayer had outstanding 7 percent cumulative preferred stock upon which dividends of $45.50 per share were in arrears. The taxpayer desired to recapitalize and offered to its stockholders $5.50 in cash and 1.4 shares of new 5 percent preferred stock in exchange for one share of old preferred stock on the understanding that the shareholders' rights to accumulate unpaid and undeclared dividends thereon would be released. The offer was accepted and the taxpayer was recapitalized. The court, in holding that the transaction was a nontaxable exchange (except for the cash distribution), pointed out that the stockholders' rights to dividend arrears, if treated as separate from the stock itself, must be considered as "securities" in a corporation a party to a reorganization. The basis of the court's decision, however, was that the rights represented by accumulations of preferred dividends are rights to share in the future earnings of the corporation in preference to its common stock, and that as such they represent such a continuity of interest in the affairs of the corporation as to constitute them "securities." Here, however, the 7 percent cumulative preferred stock of the Buildings Co. was guaranteed by a separate independent company, namely the Terminal Co., and the claims for the arrears of dividends by the preferred stockholders of the Buildings Co. were against the Terminal Co. In that connection they

were general creditors of the Terminal Co., subject to the same rights as any other general creditors. As such, they would have no proprietary interest in the Terminal Co. or right to share in the future earnings of the Terminal Co. The plan for the reorganization of the Terminal Co. under 77 (B) specifically placed the claims of the preferred stockholders of the Buildings Co. under the guaranty in the same category as the claims of general creditors. All such claims were to be paid in the new preferred stock of the Terminal Co. It should also be noted that, since the preferred stockholders of the Buildings Co. were general creditors of the Terminal Co. prior to the reorganization and were stockholders immediately thereafter, there was not such a continuity of interest in the affairs of the company as to constitute the right to receive dividend arrears "securies" within the meaning of section 112 (b) (3) of the Internal Revenue Code. See *Groman* v. *Commissioner, supra;* and *Helvering* v. *Bashford,* 302 U. S. 454.

Respondent's argument that section 112 (b) (3) does not apply must be sustained for another reason. The transfer of the new preferred stock of the Terminal Co. for the release of its guaranty of the preferred stock of the Buildings Co. was not an *exchange* within the meaning of section 112 (b) (3). The transfer was merely in payment or compromise of its own obligations. The Terminal Co. received nothing which was property in its possession, but merely succeeded in extinguishing its obligations to the preferred stockholders of the Buildings Co. That being so, such a settlement as the Terminal Co. made did not involve an exchange under section 112 (b) (3) of the Code. *Bingham* v. *Commissioner,* 105 Fed. (2d) 971; *Hale* v. *Helvering,* 85 Fed. (2d) 819; *Sisto Financial Corporation,* 47 B. T. A. 425.

There can be no doubt that the fair market value of the new preferred stock of the Terminal Co. distributed to the trustee during the taxable year represented taxable income, since it was a payment in settlement or compromise of a contractual obligation. In that respect, it does not differ from payments received by a lessor for cancellation of a lease or payments for agreeing not to compete in business. Such payments have been held to be income under section 22 (a), which expressly defines gross income to include "gains, profits, and income derived from * * * rent, * * * or gains or profits and income from any source whatever." *Hort* v. *Commissioner,* 313 U. S. 28; *Estate of John D. Beals,* 31 B. T. A. 966; affd., 82 Fed (2d) 268; see also *Commissioner* v. *Vandeveer,* 114 Fed. (2d) 719. The parties have stipulated that the fair market value of the new preferred stock of the Terminal Co. was $5 per share, and that if the fair market value of this stock should have been reported as distributable income in the

taxable year by the beneficiaries of the trusts, petitioner's share would amount to $3,370.42.

This brings us to the second question for determination, which is whether the sum of $3,370.42 is taxable to the trustee or to petitioner, who is a life beneficiary of the trusts. As has been pointed out above, this sum represents the fair market value of the new preferred stock of the Terminal Co. which was received by the trustee in the transaction discussed in the first issue. The trustee has not distributed the stock to petitioner. There is in evidence a letter from an attorney for the trustee in which the attorney advises the trustee that, in his opinion, the stock represents trust principal and should not be distributed to the life beneficiaries of the trusts. Apparently, neither petitioner nor the trustee has reported the sum of $3,370.42 as income in their respective returns for the taxable year.

Petitioner contends that since he is on the cash basis, he should not be taxed upon income which he has not received or which he has no absolute right to receive. His principal argument is that under the trust indentures, since the trustee was required to pay trust income only "as frequently as may be convenient," there was no absolute obligation on the part of the trustee to make current or periodic payments to the life beneficiaries.

Respondent contends that since the trust indentures did not expressly give the trustee the right to accumulate income, the words "as frequently as may be convenient" can not be construed to give the trustee the discretion to withhold income which would otherwise be currently distributable. He argues that the fair market value of the new perferred stock of the Terminal Co. must be classed as income which is to be distributed currently by the trustee to the beneficiaries under section 162 (b) of the Internal Revenue Code.[3] We think his contention must be sustained.

Under the first issue, it has been held that the transfer of the new preferred stock of the Terminal Co. for the release of its guaranty of the preferred stock of the Buildings Co. was merely in payment or compromise of Terminal's own obligations, and that, accordingly, income was realized in the amount of the fair market value of the stock. Since this proceeding is apparently the first instance where

---

[3] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

*     *     *     *     *     *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

any judicial determination has been made of the character of the stock in question, it is immaterial that the trustee has taken the view that the stock was trust principal and as such could not be distributed to the life beneficiaries of the trusts. There has been no determination by a state court construing the property rights in the trust corpus which is binding on us. *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5. In reaching the conclusion that the fair market value of the stock of the Terminal Co. received by the trusts was income, we have taken into consideration the fact that the trusts contained a provision permitting the trustee to determine how much of payments in the form of stock dividends on stocks of corporations held in the trust corpora should be treated as income and how much should be treated as principal. Petitioner apparently does not rely on this provision of the trusts, since he does not mention it on brief. However, it should be noted that the stock received from the Terminal Co. was not a stock dividend, since the trustee received the stock not by virtue of ownership of stock of the Terminal Co., but in compromise of an obligation of that company on the preferred stock of the Buildings Co.

In determining whether trust income is currently distributable to the life beneficiaries under section 162 (b) of the Code, we must ascertain the intent of the grantor as expressed in the trust instruments. If the grantor intended a periodic payment of trust income to the life beneficiaries, such income is currently distributable. In *Plimpton* v. *Commissioner*, 135 Fed. (2d) 482, the court pointed out that section 162 (b) taxes income to the beneficiaries which is to be distributed currently, whether actually distributed or not, whereas section 162 (c) taxes income to the fiduciary which may in his discretion be either distributed or accumulated, excepting only such part thereof as may have been actually distributed in any year, which part it taxes to the beneficiaries. The statute contrasts income which is to be distributed currently with income which may be either distributed or accumulated in the trustee's discretion. However, the tax on income must fall in one or the other category. In this proceeding, the grantor did not intend any trust income to be accumulated. If that were his intention, he would have expressly stated it. We can not spell out such a discretion to accumulate income from the expression to pay the income "as frequently as may be convenient." That being so, it must be held that the income from the trusts is currently distributable to the beneficiaries. In *Mary Pyne Filley*, 45 B. T. A. 826, 830, the trustees were to pay over the net income of the trusts in seminannual or "other convenient payments." It was held that the discretion which the trustees had under the trusts in that case was not a discretion to accumulate income and that, since the income was not to be accumulated, it was to be distributed currently

and was thus taxable to the life beneficiary. By applying the same reasoning to the facts of this case, it must be held that the discretion in the trustee to pay the income "as frequently as may be convenient" is not a discretion to accumulate income under section 162 (c) of the Code. The only conclusion which can be reached is that the income of the trusts comes within the broad provisions of section 162 (b) and was income to be distributed currently by the fiduciary to the life beneficiaries. Cf. *Eleanor Saltonstall*, 2 T. C. 1099. It should also be pointed out that the provisions of the five trusts were substantially the same, except that in the fifth trust the grantor provided that the trustee should pay the income from the trusts "quarter-annually or more frequently." We think there can be little doubt that the grantor intended the trustee to make periodic payments of income to the life beneficiaries. Accordingly, it is held that the income in question is taxable to petitioner for the taxable year.

The parties have agreed to certain adjustments which will be given effect in a recomputation under Rule 50.

*Decision will be entered under Rule 50.*