## BEDFORD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 157.

Circuit Court of Appeals, Second Circuit.

July 12, 1945.

342

Hunt, Hill & Betts, of New York City (Holt S. McKinney, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Bernard Chertcoff, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The petitioner is one of several income beneficiaries named in each of five trusts which owned shares of the 7% cumulative preferred stock of Bush Terminal Buildings Company (for brevity hereafter called Buildings). This stock was guaranteed as to dividends and as to payment of par value upon dissolution by Bush Terminal Company[1] (for brevity hereafter called Terminal) which was the sole common stockholder of Buildings. Dividends on the preferred stock were wholly in arrears after April 1933. Both corporations went into bankruptcy under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and a single plan for the reorganization of both was approved by the District Court for the Eastern District of New York. Pursuant to the plan of reorganization, the trustee of the above mentioned trusts in 1939 surrendered his shares of Buildings' preferred stock and his rights under Terminal's guaranty and received in lieu thereof the same number of shares of new non-guaranteed preferred stock with voting rights in Buildings and one-fifth as many shares of new preferred stock in Terminal.[2] The cost basis to the trusts of the stock surrendered greatly exceeded the fair market value of the stock received.[3] However, the Commissioner ruled that the value of the Terminal preferred stock received by the trustee constituted taxable income currently distributable to the life beneficiaries of the trusts, and that the petitioner's share thereof, having a fair market value of $3,370.42, was taxable to him in 1939, although the trustee refused to distribute any part of the stock to him. This resulted in the deficiency assessment which the Tax Court sustained.

The petitioner argues: (1) That the trustee received the Terminal preferred stock as part of a tax-free exchange under § 112(b) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 112(b) (3); (2) that the exchange falls within the provisions of section 112(l) (1) of the Code[4]; (3) that if, as the Tax Court ruled, the Terminal preferred stock was a payment in settlement of Terminal's contractual obligations under its guaranty, the trusts sustained a loss not a gain; and (4) that in any event the petitioner received no income in 1939 since none of the stock received by

---

[1] The guaranty printed on the back of certificates of the preferred stock read as follows: "Terminal Company hereby unconditionally guarantees to the holder of record of the shares of stock represented by the within Certificate immediate payment when due (and whether or not earned), of the full quarterly dividends thereon at the rate of seven percent (7%) per annum, and in case of the dissolution of Bush Terminal Buildings Company, of the amount of said shares and of accumulated and unpaid dividends thereon."

[2] Further details of the reorganization may be found in the Tax Court's opinion, 2 T.C. 1189.

[3] The cost basis of the 16,170 shares surrendered was nearly $1,500,000, and the cumulative unpaid dividends thereon amounted to $452,760. The fair market value of the 16,170 shares of new Buildings preferred was $165,742.50, and that of the 3,234 shares of Terminal preferred was $16,170.

[4] This section of the Code was added by section 121(b) of the Revenue Act of 1943 and being retroactive was applicable to the year 1939. The Tax Court's supplemental memorandum opinion deals with the taxpayer's contention based on the 1943 statute, which was enacted after its first opinion was rendered.

the trustee was ever made available to the petitioner.

■ 1. Section 112(b) (3) provides that "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization." The respondent concedes that the section is applicable to the exchange of the old preferred shares in Buildings for the new preferred shares in that company,[5] but contended below, and repeats the contention here, that section 112(b) (3) does not cover the receipt of the Terminal stock, first, because Terminal was not "a party to the reorganization" of Buildings within the meaning of that section, and secondly, because the Terminal stock was not received in exchange for the old preferred in Buildings but was a payment by Terminal to extinguish its obligation under its guaranty. The Tax Court sustained the contention on both grounds.

If the decision can be supported upon the second ground, we need not stop to consider the validity of the first. Although both corporations were reorganized at the same time in a consolidated proceeding and pursuant to a single plan the Tax Court's opinion states—

"However, the rights of the stockholders and creditors of each company were separately considered and determined, so that, in effect, each company was reorganized under its own plan. In the reorganization of the Buildings Co. under section 77(B) the preferred stockholders received new preferred stock in lieu of their old preferred stock. * * * In the reorganization of the Terminal Co., its financial structure was recapitalized, and the preferred stockholders of the Building Co. received new preferred stock of the Terminal Co. in consideration of the release of the Terminal Co.'s guaranty of the preferred stock of the Buildings Co. Each reorganization, however, was separate and distinct from the other."

The opinion also noted that the plan for the reorganization of Terminal specifically placed the claims of the preferred stockholders of Buildings under Terminal's guaranty in the same category as the claims of Terminal's general creditors, and provided that all such claims were to be paid in the new preferred stock of Terminal. Thus the Tax Court treated the trustee's exchange of the old for the new Buildings' preferred stock as a separate and distinct transaction taxwise from the disposition of the trustee's claim against Terminal on its guaranty. Even if we disagreed, as we do not, with such interpretation of the plan of reorganization, we should doubt our power to treat as single the two transactions which the Tax Court has treated as separate. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner of Internal Revenue v. Estate of Bedford, 65 S.Ct. 1157; Bingham's Trust v. Commissioner, 65 S.Ct. 1232. Hence the Terminal preferred was not received in exchange for the old Buildings' preferred but in satisfaction of the claim on Terminal's guaranty, and section 112(b) (3) can apply only if such claim can be considered a "security" for which the Terminal preferred was exchanged.

In numerous cases the courts have considered whether the rights received pursuant to a reorganization constitute a "security". The test is whether they give the recipient a continuing interest in the enterprise different from that of a general creditor. LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355; Helvering v. Limestone Co., 315 U.S. 179, 182, 62 S.Ct. 540, 86 L.Ed. 775; Lloyd-Smith v. Commissioner of Internal Revenue, 2 Cir., 116 F.2d 642, 643, certiorari denied 313 U.S. 588, 61 S.Ct. 1111, 85 L.Ed. 1543. In Neville Coke & Chemical Co. v. Commissioner of Internal Revenue, 3 Cir., 148 F.2d 599, it was held that the same test should be applied in determining whether what the recipient of securities gave in exchange was also a security. We agree that the test should be the same. The rights under Terminal's guaranty which the trustee gave up in exchange for its stock are not "securities" within either the common meaning of the word or the test laid down by the authoritative decisions. With respect to the arrears of dividends the holders of Buildings' preferred stock were merely general creditors of Terminal having rights like other general creditors, whose claims are obviously not "securities" within the meaning of the section. With respect to future dividends and to the payment of par value of the stock in the event of dissolution of Buildings, the shareholders' rights against Terminal were contingent upon future

---

[5] Section 112(b) (2) would also seem applicable.

events which had not happened and never could happen after the shareholders surrendered their old stock for new in the Buildings' reorganization. No one, we think, would consider such a right a "security". The petitioner argues that in Skenandoa Rayon Corporation v. Commissioner of Internal Revenue, 2 Cir., 122 F.2d 268, certiorari denied 314 U.S. 696, 62 S.Ct. 413, 86 L.Ed. 556, this court held the stockholders' rights to dividend arrears to be securities. We there said in 122 F.2d at page 270:

"The rights represented by accumulations of preferred dividends are rights to share in future earnings of the corporation in preference to common stock; as such they represent such a continuity of interest in the affairs of the corporation as to constitute them 'securities'."

This would be relevant were we considering the trustee's rights to dividend arrears as against Buildings; it has no relevance with respect to his rights against Terminal, which are those of a general creditor. The Tax Court did not err in holding section 112(b) (3) inapplicable to the trustees' receipt of the Terminal preferred stock.

■ 2. It was right also with respect to the inapplicability of section 112(*l*) (1), printed in the margin.[6] What we have said above as to the meaning of "securities" is equally pertinent here, for under this section there must be a relinquishment or extinguishment of stock or securities in consideration solely of the acquisition of stock or securities in a corporation organized or made use of to effectuate the plan of reorganization. But there is also another reason why the section does not exempt the stock in question from taxation. The legislative history indicates very clearly that where, as here, a corporation is merely re-capitalized the section was not intended to have any effect. Conference Rep. No. 1079, 78th Cong., 2d Sess., p. 46 states: "This amendment has no application to reorganizations consummated by adjustment of the capital or debt structure of the insolvent corporation without the transfer of its assets to another corporation." The Treasury Department has abided by this Congressional intent in T. D. 5402, 1944—18 Int.Rev.Bull., p. 5, which uses almost the identical language.

■ 3. The Tax Court treated the fair market value of the Terminal preferred stock as ordinary income to the trusts on the theory that the stock was given and received as a payment in satisfaction of Terminal's obligations under the guaranty. The petitioner argues that if this be so, then the trustee made a disposition of his rights under the guaranty, and section 111 of the Code, 26 U.S.C.A. Int.Rev.Code, § 111, requires that the gain or loss realized therefrom be computed with reference to the cost basis of his investment in the property disposed of. Such computation shows that the disposition resulted in an enormous loss.[7] The difficulty with this argument is that at the hearing before the Tax Court, as noted in its supplemental memorandum opinion, the only evidence introduced by the petitioner with respect to cost basis was the cost of the old Buildings preferred stock. No evidence was offered allocating any part of that cost basis to the guaranty of Terminal, doubtless because of the difficulty, if not impossibility, of producing evidence to support such an allocation. Apparently the Commissioner made his deficiency assessment on the theory that there was no cost basis attributable to the guaranty, and no evidence having been introduced to contradict his finding the Tax Court rightly held that his determination must be sustained.

---

[6] "§ 112(*l*) (1) General rule. No gain or loss shall be recognized upon an exchange consisting of the relinquishment or extinguishment of stock or securities in a corporation the plan of reorganization of which is approved by the court in a proceeding described in subsection (b) (10), in consideration of the acquisition solely of stock or securities in a corporation organized or made use of to effectuate such plan of reorganization."

"§ 112(b) (10) Gain or loss not recognized on reorganization of corporations in certain receivership and bankruptcy proceedings. No gain or loss shall be recognized if property of a corporation * * * is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—

"(A) in a receivership, foreclosure, or similar proceeding, or

"(B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended,

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation."

[7] See note 4, supra.

4. The final argument is that even if income was received by the trustee it is not taxable in 1939 to the petitioner, as he reports on a cash basis and none of the stock has ever been received by, or made available to, him. Indeed, the trustee in accordance with the advice of his legal counsel, has refused to distribute it. In one of the trusts it is provided that the trustee shall pay the net income to the beneficiaries "quarter annually or more frequently"; in the other four trusts he is directed to pay it "as frequently as may be convenient." Each trust instrument provides that "the validity and legal effect of this trust shall be governed by the laws of the State of Connecticut," where the instrument was executed.

Sections 161 and 162 of the Code, 26 U.S.C.A. Int.Rev.Code, §§ 161, 162, provide for the taxation of trust income. If it is to be accumulated, it is taxed to the trust; if it is to be "distributed currently" it is taxed to the beneficiaries "whether distributed to them or not"; if the trustee has discretion to accumulate or to distribute the income, it is taxed to the trust if accumulated or to the beneficiaries if distributed. The Tax Court held that the direction to pay income "as frequently as may be convenient" was not intended to give the trustee discretion to accumulate, and the petitioner does not argue to the contrary. He relies upon the refusal of trustee to distribute the income. But such refusal cannot affect its taxability to the beneficiary if under the terms of the trust it is properly distributable to him. The test of taxability is whether he has a present right to receive it. Plimpton v. Commissioner of Internal Revenue, 1 Cir., 135 F.2d 482, 486; Malcom v. Commissioner of Internal Revenue, 2 Cir., 97 F.2d 381, 383; DeBrabant v. Commissioner of Internal Revenue, 2 Cir., 90 F.2d 433, 436. In the case last cited a state court had already construed the trust and we were able to follow the state decision. But that circumstance will rarely be present and when it is not the federal court must determine the rights of the parties under the applicable state law as best it may. See Helvering v. Stuart, 317 U.S. 154, 162, 63 S.Ct. 140, 87 L.Ed. 154; Commissioner of Internal Revenue v. Lewis, 3 Cir., 141 F.2d 221, 223. We find nothing in the Connecticut authorities to cast doubt on the petitioner's right to have income distributed to him currently. We agree with the Tax Court that he had such

right. Consequently his share of the trust income was properly taxed to him despite the fact that he had not received it. The decision on appeal is affirmed.