Estate of Emma Earle, G. Harold Earle and Stewart E. Earle, Former Executors, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

G. Harold Earle, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Stewart E. Earle, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 4257, 4258, 4259, 4260, 4261. Promulgated October 26, 1945.

---

*George E. H. Goodner, Esq.,* for the petitioners.
*Charles J. Munz, Esq.,* for the respondent.

994

OPINION.

ARUNDELL, *Judge*: Respondent has determined that one-third of the undistributed income of the George W. Earle trust (stated in the deficiency notice to be $268,417.51) is includible in the gross estate of decedent, Emma Earle, under the provisions of section 811 (a) of

the Internal Revenue Code.[1]   The reasons for his action were expressed in the deficiency notice as follows:

In view of the failure of the testator [George W. Earle] to provide for an accumulation and his failure to provide for the disposition of any accumulation, it is held, that his wife, this decedent, acquired an absolute vested interest in one-third of the income which accrued during her lifetime and that her right to such income vested in her immediately upon the death of the testator.   Accordingly, one-third of the accumulated income as of the date of the decedent's death has been included as part of her gross estate.

Petitioners contend that under the terms of their father's will the trustees were given discretion to distribute or to withhold the income accruing to the trust estate and that the decedent had no vested interest in the accumulated income within the meaning of section 811 (a).   The pertinent language of the will is as follows:

I further direct that the income accruing to said trust estate shall be distributed at such times and in such amounts as said trustees shall deem best; said income to be paid to my wife, Emma Earle, one-third, to G. Harold Earle, his heirs, executors or administrators, one-third, and to Stewart Earle, his heirs, executors or administrators, one-third.

From this language and the other provisions of the will and from the surrounding circumstances, we are to determine what the testator intended.

The petitioners and their cotrustees interpreted the will as allowing them discretion to accumulate income.   They contend that the only limit on the trustees' discretion was a provision that the distributions be divided equally among them and their mother as beneficiaries; that "said income" can refer only to the income which the trustees determined to distribute.   It appears that the trustees administered the trust throughout the years in accordance with that interpretation; but the ultimate question is whether their action was authorized by the will.   If it was not, what the trustees have done can not affect the result here.

The testator  first directed that the income accruing to the trust estate be distributed at such times and in such amounts as the trustees should deem best.   If he had stopped at that point, there would perhaps be a stronger basis for the interpretation contended for by the petitioners.   It is observed, however, that the testator did not say that so much of the income as the trustees deemed best should be distributed.   He stated that "the income" should be distributed.   Then he went on to provide that "said income" should be distributed in the proportions stated.   As a matter purely of grammar, it would seem

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death.

that the antecedent of "said income" is "the income accruing to said trust estate" rather than such income as the trustees might determine to distribute, as is contended by petitioners. The fact that one-third of the income was to be payable to the heirs, executors, or administrators of Harold Earle and one-third to those of Stewart Earle, in view of the fact that the trust was to terminate upon the death of Emma Earle and the provision that in case of the death of either of the sons the "income that would have been payable" to him should be paid to his heirs, is further indication of an intent on the part of the testator that all the income of the trust was to be distributed. Furthermore, nowhere in the will did the testator make any provision for the accumulation of income or for the disposition of any accumulations—a fact which, it would seem, tends to negative an intent on the part of the testator that the trustees should have discretion not to distribute all the income. Cf. *Mary Pyne Filley*, 45 B. T. A. 826; *F. T. Bedford*, 2 T. C. 1189; affd., 150 Fed. (2d) 341.

Petitioners contend that under such a construction no meaning is given to the provision that distributions should be made at such times and in such amounts as the trustees deem best. It seems to us, however, that under respondent's construction of the will those words are not necessarily meaningless. They could mean merely that the trustees were not required to distribute the income monthly, e. g., or quarterly, or at any other regular intervals in equal amounts throughout a given year. The mere giving of discretion as to time and amounts of the distributions is by no means necessarily an indication that not all of the income is to be distributed.

Conceding that there may be some ambiguity in the language used by the testator, so as to warrant a consideration of the extrinsic evidence as to the testator's statements at or about the time his will was executed, nevertheless we find nothing in such statements indicating an intent that the trustees were to have discretion to distribute less than all of the income and to accumulate the surplus. The testator's instructions to his attorney were that he wished to give his estate ultimately to his two sons, but that he wanted a provision which would adequately and amply provide for his wife during the remainder of her life. Doubtless he thought that one-third of the income of the trust estate provided for in his will would be adequate to care for her in every way, and there is no reason to believe that he intended that his wife should receive nothing from the trust if the trustees should choose to give her nothing.

The cases of *Roebling* v. *Commissioner*, 78 Fed. (2d) 444; *Elizabeth W. Shelden*, B. T. A. memorandum opinion entered Feb. 20, 1942; and *Estate of Gertrude Leon Royce*, 46 B. T. A. 1090, relied upon by petitioners, are clearly distinguishable on the facts and need not be reviewed here.

From all the evidence, we conclude that it was the testator's intent that Emma Earle should have a vested right to one-third of the income of the trust.

Petitioners next contend that, even if it be held that Emma Earle was entitled to one-third of the income, she waived or disclaimed her rights or interests under the trust. It is well settled trust law that the beneficiary of a trust may disclaim his interest under the trust before acceptance. However, since Emma Earle had accepted benefits under the trust she was not in a position thereafter to disclaim. See 1 Bogert, Trusts and Trustees, § 173. Having once accepted and become the equitable owner of an interest in the trust, she could divest herself of such ownership only by a transfer to another. Michigan law requires that a conveyance by the beneficiary of any trust be in writing. Michigan Stat. Ann., § 26.972; 1 Bogert, Trusts and Trustees, § 190; cf. 1 Scott on Trusts, § 139. All that Emma Earle did was to tell the trustees in 1935, when asked whether she wanted any more money to be distributed to her, that she did not. We think, therefore, that petitioners' contention in this regard can not be sustained.

We conclude that one-third of the undistributed income of the trust is properly includible in the decedent's gross estate. The next issue requires a determination of the correct amount of the undistributed income.

Petitioners contend that the charges against income are first to be deducted, which respondent apparently now concedes. They contend also that the capital losses of the trust are to be deducted before determining distributable income, and that only the income of the trust (excluding the income to the estate during the period of administration) is to be included, because of the fact that the will provides only for the distribution of income accruing to "said trust estate."

We shall consider first the question whether the income of the estate during the period of administration is to be included. According to the Restatement of the Law of Trusts, § 234, where a will provides for the creation of a trust the income of which is payable to one beneficiary for life or a designated period and thereafter the principal to another beneficiary, in the absence of a contrary indication the income beneficiary is entitled to income from the date of the death of the testator. See also 2 Scott on Trusts, § 234.3, and 4 Bogert, Trusts and Trustees, § 811, which indicate that the rule of the Restatement is the majority rule. It appears also that that is the law of Michigan. See *Detroit Trust Co.* v. *Detroit Trust Co.*, 258 Mich. 386; 242 N. W. 738; *Poole* v. *Union Trust Co.*, 191 Mich. 162; 157 N. W. 430. We find no indication in the will or elsewhere that Emma Earle should be entitled to

nothing during the period of administration of the testator's estate. On the contrary, all the circumstances point the other way. The testator's obvious intent was to provide for her from the date of his death. The income during the period of administration therefore should be included in the computation of the undistributed income.

Petitioners' contention with respect to the capital gains and losses appears to be that, since those items are taken into account in determining the net income of a trust for income tax purposes, they should likewise be included in computing the income distributable to the beneficiary. The net income of a trust for income tax purposes and the amount of income distributable to a beneficiary, however, may be two quite different things. It is only with the latter, that is, the determination of the amount of distributable income, that we are concerned here. As between an income beneficiary and a remainderman, capital gains and losses generally fall on the principal or corpus of the trust, 4 Bogert, Trusts and Trustees, § 823, and ordinarily do not affect the computation of the income of the beneficiary, 6 Mertens, Law of Federal Income Taxation, § 36.51. Cf. *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428. Of course, the general rule may be varied by the terms of the trust instrument or the will establishing the trust, but the instrument before us is silent with respect to the treatment of capital gains and losses. Furthermore, we have been cited to no statute or case law of Michigan, nor have we found any, to indicate a contrary rule in that state.

Shortly before his death George W. Earle transferred to his two sons extensive properties outside the State of Michigan and also some stocks. From all the circumstances it would appear that his primary concern with respect to the trust was for the protection of his widow during her life, and, since there is no mention in the will of the treatment to be accorded capital losses, we find no reason to believe he intended that they should be charged to income. We conclude, therefore, that capital gains and losses are not to be taken into account in determining the distributable income of the trust.

The correct amount of Emma Earle's share of the undistributed income is $235,309.45, computed as follows:

| | | |
|---|---:|---:|
| Income of the estate | | $278,207.28 |
| Income of the trust | | 807,159.52 |
| | | |
| Total income | | 1,085,366.80 |
| Income charges, estate | $5,176.08 | |
| Income charges, trust | 48,328.59 | |
| | | 53,504.67 |
| | | |
| Total distributable income | | 1,031,862.13 |
| | | |
| Emma Earle's share, one-third | | 343,954.04 |

Distributions to Emma Earle:  
  Estate:  
    Cash _____ $20,000.00  
    Other _____ 1,554.81  
  Trust:  
    Cash _____ 79,100.00  
    Other _____ 7,989.78  
                            $108,644.59

Emma Earle's share of undistributed income includible in her estate _____ 235,309.45

As for the third issue, respondent has determined that no deduction is allowable for the amount of $35,606.69 paid by the executors of Emma Earle's estate in settlement of the seven notes given by decedent to her grandchildren, because of the provisions of section 812 (b) (3) of the Internal Revenue Code.[2] Petitioners contend that under the Michigan negotiable instruments law failure of consideration is a matter of defense; that Emma Earle did not in her lifetime raise the defense; and that after her death the probate court ordered payment of the notes. They further contend that the sum in question did not pass at the death of Emma Earle, and that the estate tax law imposes a tax upon the passing of property at death.

The issue before us is not the includibility of the sum of $35,606.69 in the gross estate of the decedent, but rather the deductibility thereof as a claim against the estate, and the statute expressly denies the deduction, because concededly there was no consideration in money or money's worth for the notes. The statute fully recognizes that certain claims may be allowable against an estate under state law, but the deductibility of such claims for Federal estate tax purposes is expressly limited to those contracted in good faith and for full and adequate consideration.

On the authority of *Estate of Julius C. Lang*, 34 B. T. A. 337; affirmed on this issue, 97 Fed. (2d) 867, we hold that no deduction is allowable in respect of the seven notes.

*Decisions will be entered under Rule 50.*

---

[2] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

\* \* \* \* \* \* \*

(3) for claims against the estate,

\* \* \* \* \* \* \*

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered \* \* \*. The deduction herein allowed in the case of claims against the estate \* \* \* or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. \* \* \*