THALIA W. MALCOM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81192, 82651. Promulgated July 20, 1937.

---

*A. Harding Paul, Esq.*, for the petitioner.

*Frank M. Thompson, Esq.*, and *Loren P. Oakes, Esq.*, for the respondent.

### OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for 1932 and 1933 of $1,604.27 and $1,401.74, respectively. Petitioner alleges that the respondent erred in the determination of the deficiencies by including $10,443.25 and $2,346.91, respectively, in gross incomes for 1932 and 1933, representing amounts of income received by a trust of which she was the sole life income beneficiary, even though not paid over to her during the taxable years.

The parties have stipulated that the petitioner is entitled to deductions from gross income in addition to those reported on the returns of $205.11 for 1932 and $534.89 for 1933, representing taxes paid to Great Britain.

The petitioner is a citizen of the United States and the daughter of Robert E. Westcott, who died a resident of the City, County, and State of New York, on April 23, 1907, leaving as his survivors his widow and the petitioner. The decedent left a last will and testament which was duly admitted to probate and recorded.

Under paragraph sixth of his will the decedent bequeathed the residue of his estate in trust to be held during the lives of his widow and the petitioner, the income to be paid in accordance with the terms thereof. The decedent's widow, the mother of the petitioner, died in 1919, after which time the petitioner was entitled to receive the entire net income of the trust estate.

On August 19, 1931, the trustees of the trust were the petitioner, the Chase National Bank of the City of New York, and Stephen C. Millett, Jr., and on that date as such trustees they executed a lease agreement covering premises located at the corner of 181st Street and Broadway, New York City, with the Masol Realty Corporation, a New York corporation. The lease agreement was made on the basis of the petition filed by the trustees with the Supreme Court for the County of New York in New York City on April 21, 1931, and was entered into subsequent to orders of that court under dates of June 27 and August 12, 1931.

On March 3, 1920, the then acting trustees had by an agreement in writing leased the above mentioned premises to D. A. Schulte, Inc., a New York corporation, for a term of 21 years beginning May 1, 1920, and ending May 1, 1941.

On or about April 8, 1924, D. A. Schulte, Inc., sublet for the term of the lease the above mentioned premises to the Masol Realty Corporation, which on that date became and ever since has been the sublessee.

In 1931 the Masol Realty Corporation, desiring to insure its continued possession of the premises for a term beyond May 1, 1941, opened negotiations with the trustees for a 21-year lease covering a term from May 1, 1941, to May 1, 1962. The trustees were unwilling to make this proposed new lease without receiving a cash payment from the Masol Realty Corporation and it was agreed, therefore, subject to certain qualifications, that the Masol Realty Corporation should make 10 annual payments to the trustees of substantially $10,000 each, known as "annual consideration payments" between the years 1931 and 1941, when the new lease went into effect.

. Under date of May 11, 1933, an agreement was entered into by and between the trustees and the Masol Realty Corporation whereby the "annual consideration payments" provided for in the agreement of October 19, 1931, were reduced. On May 7, 1934, the trustees entered into an additional agreement with the Masol Realty Corporation by which the trustees waived for a period payment of the "annual consideration payments" as reduced by the aforesaid agreement of May 11, 1933.

The petitioner did not in 1932 or 1933 receive, and has not since received, the above mentioned "annual consideration payments" or any part thereof from the trustees. The trustees received from the Masol Realty Corporation on account of the aforesaid "annual consideration payments" $10,443.25 in 1932 and $2,346.91 in 1933, and ever since their receipt have held and retained such payments and continue to hold them in a special account as and for distribution to unascertained beneficiaries, and the trustees reported these sums in fiduciary income tax returns for the years 1932 and 1933 as "undistributed income."

Under the lease agreement entered into on August 19, 1931, to begin May 1, 1941, rentals were to be paid by the Masol Realty Corporation upon the basis of a 6 percent return upon the appraised value of the land as of May 1, 1941, plus $6,400 per annum, less 2 percent per annum for depreciation on the agreed value of the buildings, and for the period May 1, 1952, to May 1, 1962, at the annual rate of 6 percent upon the appraised value of the land at May 1, 1952, plus $4,640, less depreciation at the rate of 2 percent per annum on the buildings. The lease provided:

It is expressly understood and agreed that as part consideration for the making of this lease by the Landlords to the Tenant and as a condition precedent to the taking by the Tenant of possession of the premises under this lease and as a condition precedent to the commencement of the term hereof, there shall be paid by the Tenant to the Landlords in addition to any and all other payments required to be made hereunder, sums of money hereinafter also called "annual consideration payments" in equal monthly payments in advance as follows: At the rate of seven thousand five hundred ($7,500.) per annum from the date hereof until October 1, 1931, or until the commencement of the

term hereof if the same should commence on a day earlier than October 1, 1931; and at the rate of Ten thousand dollars ($10,000.) per annum from October 1, 1931 to May 1, 1941, or until the commencement of the term hereof if the same should commence on a date after October 1, 1931 and before May 1, 1941. Such payments shall be made with adjustment for any period less than one month.

Petitioner has kept her books of account and filed her income tax returns on the cash receipts and disbursements basis. The trustees likewise kept their books of account and filed their returns upon the same, basis.

On September 10, 1935, an additional income tax for the year 1932 in the amount of $1,604.27 was paid by the petitioner and thereafter interest on such sum was also paid by her. On about April 11, 1936, an additional income tax for the year 1933 of $1,401.74 was likewise paid by the petitioner and thereafter interest on such sum was also paid by her.

The question presented by this proceeding for the determination of the Board is whether the petitioner is liable to income tax for the years 1932 and 1933 upon the amounts of $10,443.25 and $2,346.91, received by the trust in 1932 and 1933, but not actually paid over to her during those years. The respondent contends that these amounts constitute taxable income of the petitioner for those years upon the ground that the petitioner was the sole life income beneficiary of the trust and that the amounts represented income received by the trust currently distributable to her. The contention of the petitioner is that they were not currently distributable to her and that she therefore is not taxable upon them.

Section 161 (a) (1) and (b) and section 162 (b) of the Revenue Act of 1932 determined persons subject to taxation upon "annual consideration payments" involved in these proceedings. They read as follows:

SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust.

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

      *      *      *      *      *      *      *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of

an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

The petitioner does not deny that the payments in question constituted taxable income to either the trust or to her in both tax years. She contends that they were taxable income of the trust and not of herself; that they represented amounts to be accumulated in trust for the benefit of unascertained persons; that it would not be known until 1941, or upon the prior termination of the trust in case of her death, who would receive the income.

The petitioner admits that no court passed upon the question as to whether the payments received in 1932 and 1933 were distributable to her. John J. Graeber, Jr., vice president of the Chase National Bank of the City of New York, one of the trustees, when asked why he did not secure a court order with reference to the distribution of the "annual consideration payments" testified:

I was advised by counsel that the initial rent represented income to the persons who may be entitled to the income from time to time after 1941 when the lease went into effect, and the parties in interest agreed with counsel to treat it in that manner.

In *Mary Clark De Brabant*, 34 B. T. A. 951 we held that where the person to whom income of a trust was distributable was ascertained, but the distributability of that income, withheld during the tax year by the trustee on the ground that part or all of the amount withheld was corpus and not income, was contested, conclusively adjudicated in a later year as distributable income of the trust, and then paid to the beneficiary, such income was not taxable to the trust under section 161 (a) (1), but was taxable to the beneficiary thereof for the year when distributable, whether or not it was then distributed, under sections 161 (a) (2) and 162 (b). In the course of our opinion we said:

It is that right of petitioner, beneficiary, to receive the contested income then, not her actual or constructive receipt of such income during that year, which fixes her liability for the tax thereon, as income "currently distributable" during that year, under sections 161 (a) (2) and 162 (b), *supra.*. The possession of that right to receive income, not its actual or constructive receipt, is the test of petitioner's liability here. That is the applicable test announced in *Freuler* v. *Helvering*, 291 U. S. 35. * * *

Our decision in that case was affirmed by the Circuit Court of Appeals for the Second Circuit on June 7, 1937, 90 Fed. 433. In the course of its opinion the court said:

In *McCrory* v. *Commissioner*, 69 F. (2d) 688 (CCA. 5), a trustee to liquidate holdings of real estate had failed to set aside during the year 1924 amounts

of income sufficient to discharge taxes and expenses of the trust and to distribute the remainder to the beneficiaries at the end of the year. He stated that he did not do these things though they were prescribed by the terms of the trust deed because gift and other taxes that were burdens upon the trust had not been adjusted with the federal government during the year. The question before the court was whether the remainder of the income for 1924 after setting aside sums estimated as sufficient to discharge the trust burdens was taxable against the beneficiaries. The court held that the trustee ought to have set aside the required sums and that the remainder was income "to be distributed currently" to the beneficiaries and taxable to them. Sibley, J., said:

> The test here is not what this trustee thought or did, but what his trust empowered or required him to do. What instructions would a court of equity, if appealed to on December 31, 1924, have given him?

The petitioner in these proceedings is one of three trustees of the trust. At the date the lease was entered into in 1931 the petitioner had three children, all of whom were of age. They joined with their mother in 1931 in the petition to the Supreme Court of the County of New York for permission to enter into the lease agreement executed in that year. Although it may not be inferred from the evidence of record that tax liabilities were given consideration in the failure on the part of the trust to distribute to the petitioner the "annual consideration payments" received by the trust in 1932 and 1933, it apparently was immaterial to her whether the amounts were distributed or not. She had a large taxable income without the receipt of these moneys.

From a consideration of the entire record, we are of the opinion that the "annual consideration payments" made by the Masol Realty Corporation in 1932 and 1933 were not intended to be any part of the rental for the use of the premises after 1941. The Masol Realty Corporation for reasons of its own desired to have a lease upon the property which would not terminate prior to 1962. In order to obtain an assurance of a continued tenure of the demised premises it was willing to make the "annual consideration payments." The trustees for the benefit not only of the remainderman but of the person entitled to the life income insisted that there should be a cash consideration currently payable. The "annual consideration payments" were admittedly taxable income of the trust. Under the terms of the will of the petitioner's father the entire net income was payable to the petitioner after the death of his widow. We see no reason why the "annual consideration payments" did not constitute distributable income of the trust during the taxable years which are before us.

A case on its face closely resembling the proceedings at bar is *In re Archambault's Estate*, 232 Pa. 347; 81 Atl. 314. The facts in that case were that in 1909 a trust was the lessor of property. The term of the lease expired January 1, 1913. The United Gas Im-

provement Co. arranged with the then lessee to rent the property. The new lease was to begin upon the expiration of the old lease. The United Gas Improvement Co. agreed to pay a $10,000 bonus for the execution of the new lease and also a monthly rental of $1,041.67 to January 1913. The trust received the bonus payment in 1909, together with additional monthly payments. The life tenant claimed that she was entitled to receive as income in 1909 the $10,000 bonus paid. A niece contended that this sum should be ratably distributed over the whole term of the new lease for the benefit of those entitled to it during the term. The court held, however, that as the life tenant was entitled to all of the income of the trust for 1909, the $10,000 received by the trust in 1909 was a part of the income which was distributable to her. The determination of the court clearly supports the contentions of the Government herein.

From a consideration of all of the evidence we are of the opinion that the respondent did not err in his determination that the petitioner is liable to income tax for the years 1932 and 1933 upon the "annual consideration payments" received by the trust in those years.

*Judgment will be entered under Rule 50.*