MARY DEF. HARRISON GEARY, PETITIONER, v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 8209.   Promulgated July 7, 1947.

*Andrew B. Young, Esq.*, and *David P. Brown, Jr., Esq.*, for the
petitioner.
*Karl W. Windhorst, Esq.*, for the respondent.

### OPINION.

JOHNSON, *Judge*: The Commissioner determined a deficiency of
$1,505.31 in petitioner's income tax for 1941, and, with adjustments for
1942, a deficiency of $8,417.75 for 1943.   Petitioner assails the inclu-
sion in income of amounts which were distributed to her as the life
beneficiary of a trust in accordance with a court decision that trust
principal be used for payments of carrying charges on unproductive
trust-held realty instead of income, which the trustee had used for that
purpose since 1929.   She contends that the amounts awarded to her as

a consequence constituted a nontaxable distribution of principal, and, secondly, that section 162 (d), Internal Revenue Code, limits the taxable amount of the distribution to the net income of the trust. Petitioner also claims the right to deduct attorney's fees incurred in procuring the decree. Other issues involve adjustments to conform to a stipulation of facts.

This proceeding was submitted upon a stipulation and exhibits, which we incorporate by reference as findings of fact, and from which it appears that:

Petitioner, an individual residing in Philadelphia, Pennsylvania, filed her income tax returns for 1941, 1942, and 1943 with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. She is the daughter of Alfred C. Harrison, who died a resident of Montgomery County, Pennsylvania, on July 30, 1927, leaving a will and codicils which were duly probated before the registrar of wills of that county. By the fifth paragraph of his will Harrison gave, devised, and bequeathed to John S. Newbold, his son William Frazier Harrison, and the Pennsylvania Co. for Insurances on Lives and Granting Annuities, as trustees, the residue of his estate, directing them to set aside sufficient capital to produce $15,000 a year payable to a daughter-in-law for life, and to divide the balance into four equal parts, to hold, invest, and reinvest; to receive the returns therefrom; and "to pay the net income from one of such parts" to each of his three daughters and one son for life. Other provisions not here material relate to disposition of the remainder interest. Upon the death of the daughter-in-law and, in case of the death of the son or a daughter without issue, the principal of the deceased's share was to be divided equally among the trusts created for the surviving children.

The residuary estate comprised real property, which vested in the trustees immediately upon decedent's death, and personal property, which was awarded to them by decree of the orphans' court on July 6, 1928. The corporate trustee placed the personal property in four separate and equal trust accounts, which were each designated on its records with the name of one of the four beneficiaries, his daughters and son. It administered the real property in a separate fiduciary account designated "Estate of Alfred C. Harrison, Undivided Account," No. 9086.

During the years 1928 to 1940, inclusive, expenses for maintenance, repairs, taxes, and other charges attributable to operation of some parcels of the real estate exceeded the gross income from such parcels, and to pay the excess the trustees used net income of productive properties in the account and net income transferred from the four trust accounts in the aggregate amount of $87,591.91. For the years 1941, 1942, and 1943 they similarly paid such excesses in the amounts of

10

$10,341, $52,852.73, and $7,151.10, respectively. On May 28, 1941, the four children petitioned the orphans' court to vacate, set aside, open, review, and correct the trustees' accounts previously confirmed and to award to them as life beneficiaries the income used in prior years to pay the excesses of carrying charges on the unproductive real property. By decree entered February 6, 1942, the court held such charges properly payable from principal, and, as they had not been so paid, it awarded to the life beneficiaries "out of principal" the $87,-591.91 which had been improperly taken from income and applied to payment of the excesses. Of this award, petitioner's share was one-fourth, or $21,879.98. The trustees paid her in satisfaction thereof $9,500 at various times in 1942 and $12,397.97 in 1943. On that part of the award attributable to the years 1935 to 1939, inclusive, petitioner has already been taxed; on the remaining $12,894.20, attributable to the years 1928 to 1934, inclusive, and to 1940, she has not.

For each of the years 1928–1943 the corporate trustee computed net income or loss by charging the excesses of expenses over gross income from the unproductive properties against net income distributable to the life beneficiaries, and petitioner reported her share of the net income so computed in her individual income tax returns for those years. Petitioner and the fiduciary filed returns on the basis of the calendar year. By the death of a sister on January 30, 1942, petitioner became entitled to one-third of the deceased's trust interest.

After the court decree and on April 22, 1942, the corporate trustee advanced $51,866.62 for the payment of taxes on unproductive real estate in the account. To repay this advance, to refund the $87,591.91 to the income account and distribute it to the life beneficiaries as ordered by the court, and to provide $541.47 for miscellaneous carrying charges on unproductive properties, each of the four trusts by the sale of securities realized $35,000, or a total of $140,000, which the corporate trustee transferred from principal to income account and expended for the purposes recited. Following the principle of the decree, the trustee on August 31, 1943, applied $6,177.03 of principal in the real estate account to the payment of carrying charges on unproductive properties.

In determining petitioner's income tax for 1941 the Commissioner added to the amount reported by her as income from the trust $2,585.25, being one-fourth of the $10,341 of trust income used in that year by the trustees to pay carrying charges on unproductive properties. For 1942 he added to income reported $12,894.20 representing petitioner's share of the award not previously taxed, and $12,247.60, her proportionate part of carrying charges of $42,067.09 paid on unproductive properties. For 1943 he similarly added to income reported $2,056.01, petitioner's proportionate part of the $6,177.03 of income applied in that year to carrying charges.

In obtaining the court order for an additional distribution by the

trustees, petitioner incurred attorney's fees of $2,500, which the corporate trustee paid from petitioner's share of the amount ordered distributed. Neither she nor the trustees deducted this payment on their income tax returns for 1942, and the Commissioner did not deduct it in determining the deficiency for that year.

In 1942 the trustee paid taxes on real properties of the trust in the aggregate amount of $64,398.69, of which only $58,398.69 was deducted on the fiduciary return. The trust reported a net loss of $56,306.87, of which one-fourth, or $14,076.72, was attributed to each trust.

(1) Petitioner assails the Commissioner's determination that her taxable incomes for 1941, 1942, and 1943 should include amounts equal to the carrying charges on unproductive trust-owned real estate which were judicially held payable out of the trust's principal. Although entitled by the trust's terms to income only and subject to tax on the income distributed to her under section 162 (c), Internal Revenue Code, she contends that the additional amount made available for distribution by virtue of the rule that the carrying charges be paid from principal are to be regarded in her hands as nontaxable principal, not income, and stresses specifically that, in its decree awarding the life beneficiaries amounts equal to carrying charges for prior years which the trustees had improperly paid from income, the court directed that payment be made "out of principal." Respondent properly concedes that petitioner is not now taxable on that part of the award attributable to the years 1935–1939, for those amounts have been previously taxed to her for those years, although she did not then receive them. But he argues that the amounts released for distribution to the income beneficiaries by the payment of carrying charges from principal instead of from income constitute income taxable to the distributee, regardless of the effect of such payments on income of the trust.

Respondent's contention is well supported by several decisions which are directly in point and involve analogous facts. In *Kathryn E. T. Horn*, 5 T. C. 597, the life beneficiary of a Pennsylvania trust in 1940 was judicially awarded income which the trustee had applied to carrying charges on unproductive real estate during the years 1929–1940. The Commissioner's determination that the full amount of the award was income taxable to her in that year was sustained by this Court. To the same effect are *Commissioner* v. *Lewis* (C. C. A., 3d Cir.), 141 Fed. (2d) 221, and *Emily B. Harrison*, 7 T. C. 1. Recognizing these and other decisions as adverse, petitioner invites reconsideration, stressing that the distributions here in controversy were ordered paid from principal; that they were never net income to the trusts; and that "to turn principal into income by virtue of a bookkeeping entry" is "to pull taxable income literally out of thin air." This argument was discussed and rejected by the Circuit Court of Appeals for the Second Circuit in *Johnston* v. *Helvering*, 141 Fed. (2d) 208, and we adhere to

that decision. The amounts distributed in accordance with the court decree were taken, it is true, from principal account, but only because in prior years they had been erroneously placed there, and in correcting that error the trustees transferred them to the income account for distribution. Because the carrying charges of unproductive real estate were properly payable out of principal, trust income was not reduced by the amount of them, and its character as income in the hands of the distributees is not altered because under the scheme of the revenue acts the carrying charges provide basis for a deduction by the trust.

(2) As a second support for her position petitioner invokes section 162 (d), Internal Revenue Code,[1] enacted as section 111 (c) and (e),

---

[1](d) RULES FOR APPLICATION OF SUBSECTION (b) AND (c).—For the purposes of subsections (b) and (c)—

(1) AMOUNTS DISTRIBUTABLE OUT OF INCOME OR CORPUS.—In cases where the amount paid, credited, or to be distributed can be paid, credited, or distributed out of other than income, the amount paid, credited, or to be distributed (except under a gift, bequest, devise, or inheritance not to be paid, credited, or distributed at intervals) during the taxable year of the estate or trust shall be considered as income of the estate or trust which is paid, credited, or to be distributed if the aggregate of such amounts so paid, credited, or to be distributed does not exceed the distributable income of the estate or trust for its taxable year. If the aggregate of such amounts so paid, credited, or to be distributed during the taxable year of the estate or trust in such cases exceeds the distributable income of the estate or trust for its taxable year, the amount so paid, credited, or to be distributed to any legatee, heir, or beneficiary shall be considered income of the estate or trust for its taxable year which is paid, credited, or to be distributed in an amount which bears the same ratio to the amount of such distributable income as the amount so paid, credited, or to be distributed to the legatee, heir or beneficiary bears to the aggregate of such amounts so paid, credited, or to be distributed to legatees, heirs, and beneficiaries for the taxable year of the estate or trust. For the purposes of this paragraph "distributable income" means either (A) the net income of the estate or trust computed with the deductions allowed under subsections (b) and (c) in cases to which this paragraph does not apply, or (B) the income of the estate or trust minus the deductions provided in subsections (b) and (c) in cases to which this paragraph does not apply, whichever is the greater. In computing such distributable income the deductions under subsections (b) and (c) shall be determined without the application of paragraph (2).

(2) AMOUNTS DISTRIBUTABLE OUT OF INCOME OF PRIOR PERIOD.—In cases, other than cases described in paragraph (1), if on a date more than 65 days after the beginning of the taxable year of the estate or trust, income of the estate or trust for any period becomes payable, the amount of such income shall be considered income of the estate or trust for its taxable year which is paid, credited, or to be distributed to the extent of the income of the estate or trust for such period, or if such period is a period of more than 12 months, the last 12 months thereof.

(3) DISTRIBUTIONS IN FIRST 65 DAYS OF TAXABLE YEAR.—

(A) General Rule.—If within the first 65 days of any taxable year of the estate or trust, income of the estate or trust, for a period beginning before the beginning of the taxable year, becomes payable, such income, to the extent of the income of the estate or trust for the part of such period not falling within the taxable year, or, if such part is longer than 12 months, the last 12 months thereof, shall be considered, paid, credited, or to be distributed on the last day of the preceding taxable year. This subparagraph shall not apply with respect to any amount with respect to which subparagraph (B) applies.

(B) Payable Out of Income or Corpus.—If within the first 65 days of any taxable year of the estate or trust, an amount which can be paid at intervals out of other than income becomes payable, there shall be considered as paid, credited, or to be distributed on the last day of the preceding taxable year the part of such amount which bears the same ratio to such amount as the part of the interval not falling within the taxable year bears to the period of the interval. If the part of the interval not falling within the taxable year is a period of more than 12 months, the interval shall be considered to begin on the date 12 months before the end of the taxable year.

Revenue Act of 1942, and section 133 (a) and (b), Revenue Act of 1943. She contends that, whatever may have been the rule prior to 1942 under court decisions then controlling, this rule was superseded by legislation applicable to taxable years beginning after December 31, 1941, and that the new statutory provisions relieve a beneficiary of tax on distributions out of principal or prior years' income to the extent that such distributions exceed the current year's net income of the trust.

An estate or trust is permitted by section 162 (b) and (c) to deduct the amount of its income for the taxable year which is currently distributable to beneficiaries, and the beneficiaries in turn are required to include the distributions in their respective taxable incomes. Prior to the enactment of subsection (d) an annuity, chargeable against corpus, was not deductible by the trust and was not taxed to the beneficiary, although often paid from trust income. Likewise, amounts distributed from the trust's income of prior years were not deductible. To rectify resulting inequities in tax incidence (see Rept. No. 2333, p. 65, Ways and Means Committee, 77th Cong., 2d sess., Rept. No. 1631 p. 69, Senate Finance Committee, 77th Cong., 2d sess.), Congress enacted subsection (d) (1), (2), and (3), giving the trust a right to deduct amounts distributable out of other than income and amounts distributable out of income of prior years by fictitiously considering such distributions as made from current income. A distribution from prior years' income was made deductible in the year of payment if the amount became payable more than 65 days after the beginning of the year, but deductible from the preceding year's income, if payable within 65 days from the beginning of the year. Subsections (d) (2) and (3) (A). In 1943 the complementary subsection (d) (4) was added, providing that a beneficiary recipient should not be taxed on a distribution serving as a basis for either of the foregoing deductions to the extent that such distributions should exceed the trust's net income computed without them. All provisions of subdivision (d) are expressly applicable only to years beginning after December 31, 1941. Sec. 111 (e), Revenue Act of 1942; sec. 133 (b), Revenue Act of 1943.

Having held above that there was no distribution of principal, we shall not discuss petitioner's argument based on subsection (d) (1), relating to distributions out of other than income. To avail herself of the benefits of the other provisions of subdivision (d), petitioner must establish that the income of prior years awarded to her by the

(4) EXCESS DEDUCTIONS.—If for any taxable year of an estate or trust the deductions allowed under subsection (b) or (c) solely by reason of paragraph (2) or (3) (A) in respect of any income which becomes payable to a legatee, heir, or beneficiary exceed the net income of the estate or trust for such year, computed without such deductions, the amount of such excess shall not be included in computing the net income of such legatee, heir, or beneficiary under subsection (b) or (c). * * *

court decree of February 6, 1942, served as a basis for the trust's deduction of the award under section 162 (d) (2) or (3) (A), and, having so established, she is subject to tax on the distribution to the extent that trust income absorbed the payment as a deduction, but is exempt from tax on the excess above the amount necessary to wipe out trust income. An application of subsection (d) (4), it should be stressed, is expressly conditioned on the availability of the distribution as a deduction under subsections (d) (2) or (3) (A). If it is not so available, then (d) (4) is inoperative as a tax-exempting provision.

From the facts established, we find that the amount in controversy was not deductible when distributed by the trust. The prior years' income became payable when the court decree was entered on February 6, 1942, or within 65 days from the beginning of the taxable year. It can not, therefore, be considered as current income of 1942 and hence deductible by virtue of (d) (2), but rather as current income of the preceding year, 1941. Normally under (d) (3) (A) it would be deductible in the preceding year, but subdivision (d) is made applicable only to years beginning after December 31, 1941, and, therefore, it is not deductible in 1941 either. Under these circumstances there was no deduction allowed or allowable to the trust "solely by reason of paragraph (2) or (3) (A)," and hence no unabsorbed "excess" which by (d) (4) "shall not be included in computing the net income of" the beneficiary. It is petitioner's misfortune that the award became payable within the 65-day transition period when the amendment of 1942 first took effect. Had the award been made in 1941, her distributive part of it would have been taxable in full, as held in the first part of this opinion. Had it been made more than 65 days after the beginning of 1942, it would have been considered as current trust income, deductible as such, and her distributive part of the excess above that absorbed by the deduction would have been tax-exempt. But, as the award was not made more than 65 days after the beginning of 1942, section 162 (d) affords no relief. The rule recognized in *Kathryn E. T. Horn*, *supra*, governs, and the Commissioner's inclusion of petitioner's share of the award in her taxable income is approved.

(3) Petitioner claims the right to deduct $2,500 which the trustee paid out of her share of trust income to an attorney for legal services in procuring the court award. This deduction was not claimed on the income tax return nor allowed in the computation of the deficiency, since the distribution due her was reduced by this amount, she contends that she constructively made the payment and we agree. Section 23 (a) (2), Internal Revenue Code, permits an individual to deduct all ordinary and necessary expenses paid or incurred for the collection of income, and, as the fee was incurred for that purpose

and paid on December 31, 1942, we sustain her right to the deduction. *Stella Elkins Tyler*, 6 T. C. 135.

(4) In an amended answer the respondent affirmatively makes claim for an increased deficiency in petitioner's income tax for 1942, on the ground that in the determination the amount of $52,408.09, used by the trustees to pay carrying charges on the trust's unproductive real properties, was divided between two years, $10,341 being attributed to such charges for 1941 and the remainder of $42,067.09 to such charges for 1942. As the parties have stipulated that the trustees paid from income $10,341 for 1941 and $52,852.73 for 1942 in satisfaction of the excesses of carrying charges over gross income from unproductive properties for those years, the respondent's claim is sustained in the amount asked. The discrepancy between that amount and the slightly larger stipulated payment is unexplained. Petitioner's share of distributable trust income will, therefore, be recomputed with this adjustment.

(5) The parties are in agreement that the trustees paid taxes of $64,398.69 on trust real estate in 1942 while a deduction of only $58,398.69 was claimed on the fiduciary income tax return, reflected in the computation of petitioner's share of income, and allowed in computation of the deficiency. Proper adjustment should be made to reflect an increase of $6,000 in the amount of this deduction, distributable among the four trusts.

Reviewed by the Court.

*Decision will be entered under Rule 50.*