A. Douglas Russell v. Commissioner.
Russell v. Commissioner
Docket No. 15294.
United States Tax Court
1948 Tax Ct. Memo LEXIS 96; 7 T.C.M. (CCH) 627; T.C.M. (RIA) 48170; August 31, 1948
Allen G. Gartner, Esq., 815 15th St., N.W., Washington, D.C., and Edward I. Sproull, C.P.A., 17 East 42nd St., New York, N. Y., for the petitioner. William A. Schmitt, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: The tax in controversy is income tax for the year 1940 in the amount of $13,516.29. The sole contested issue is whether petitioner, who was the life beneficiary of a trust established under his father's will, is taxable in 1940 on account of a payment made to him by the trustee in that year pursuant to a New Jersey Court decree. [The Facts] *97 All of the facts involved in this proceeding have been embodied in a stipulation filed by the parties, and are hereby found in accordance therewith. Petitioner's tax return was filed with the collector for the third district of New York. Petitioner's father died in 1919, leaving a will under which the City Bank Farmers Trust Co. was named trustee of a fund the income of which was payable to petitioner and the other three children of testator in equal shares for their respective lives. On the death of each life tenant his share was to pass to his issue as he might appoint or, in default of appointment, equally. If there were no issue, the life tenant's share was to pass to the remaining children of the testator. The will has been construed and has been administered as establishing four separate trusts. Among the trust assets were 954 first consolidated mortgage bonds in the face amount of $1,000 each of Woodward Iron Co. These bonds were of an aggregate fair market value of $405,000 on the date of testator's death, and $658,260 on the establishment of the trust in October, 1921. On January 21, 1933, there remained in the trust 540 such bonds carried at $345,000, the balance having *98 been sold. On that date the obligor defaulted in the payment of interest, and by January 1, 1937, the unpaid interest amounted to $121,500. After various proceedings under section 77B of the Bankruptcy Act, a plan of reorganization of the debtor was approved on December 1, 1936, calling for an exchange of $500 in new first mortgage bonds, and $725 in new second mortgage bonds for each $1,000 face value of old first consolidated mortgage bonds. It was provided that any cash paid to the bondholders would equally reduce the amount of second mortgage bonds required to be given in exchange. The plan was carried out by delivering for each old bond one new first mortgage bond of $500, one new second mortgage bond of $600, and cash in the amount of $125, so that the trustee received in 1937 in exchange for old bonds of a face amount of $540,000 and unpaid interest of $121,500, new first mortgage bonds in the amount of $270,000, new second mortgage bonds in the amount of $324,000, and cash in the amount of $67,500, totaling the same amount as the aggregate face value and unpaid interest of the old bonds. The cash referred to was distributed equally among the life beneficiaries, including *99 petitioner who reported the amount as taxable income for that year and paid the tax thereon. For the purpose of obtaining instructions on how the transactions should be treated between the principal and income accounts of the trust, the trustee applied to the Chancery Court of New Jersey for instructions, with the result that the Chancery Court found that the value of the new bonds and cash received by the trustee in the exchange was $785,146.50; that the life tenants were entitled to.183673 of the total, that being the relation which the unpaid interest bore to the entire claim; and, accordingly, in 1940 decreed that the sum of $144,210, or.183673 of $785,146.50 "is apportionable to the income beneficiaries," $76,710 of which having not theretofore been paid was to be distributed equally among the four income beneficiaries, including petitioner. The amount of $20,829.48, which, presumably including interest, is stipulated to be "the petitioner's share of this payment" was not reported as income in petitioner's 1937 tax return or in the return for any subsequent year, and it is that amount, paid in 1940, which respondent has determined to be taxable to petitioner in the year now *100 in controversy, and which presents the subject matter of the dispute. The underlying principle apparently involved is that where a life tenant, whose participation relates only to income, becomes entitled to a trust distribution, it must be income, and hence taxable as such. That is as true here, regardless of the nature of the original transaction from which the distributions arose, as in any of the cases applying the principle. Theodore R. Plunkett, 41 B.T.A. 700, affirmed Plunkett v. Commissioner ( C.C.A., 1st Cir.), 118 Fed. (2d) 644; Robert W. Johnston, 1 T.C. 228, affirmed (C.C.A., 2nd Cir.), 141 Fed. (2d) 208, certiorari denied, 323 U.S. 715; John Frederick Lewis, Jr., 1 T.C. 449, affirmed (C.C.A., 3rd Cir.), 141 Fed. (2d) 221. The suggestion that the decree of the New Jersey Chancery Court awarding the payment to petitioner was erroneous is not impressive. We are bound to accept State court decisions determining property rights in adversary proceedings, Freuler v. Helvering, 291 U.S. 35, and in this case it is only that decree which caused the payment to petitioner without *101 which he would presumably have had no disputed income and hence no tax problem. We find it difficult to share with petitioner his disrespect for an adjudication so beneficial to his material welfare. Petitioner complains "As to the effect of the New Jersey Court's decree upon the provisions of the Code governing the taxation of income, it is submitted that the decree cannot create income out of what is not strictly statutory income." The decree could, however, determine what property rights petitioner had. "The nature and extent of the beneficiary's interest in the trust are determined by the state law and the decision of a competent state court is conclusive as to the validity of such interest." Plunkett v. Commissioner, supra.Under the circumstances, anything he received under the decree must have been income, since that was all he could be entitled to under the trust. Being income, it was taxable as income. "Since the * * * [payment] was requested by and paid to the petitioner as income, the only things he was entitled to under the trust, he cannot be heard now to say that it was not income in order to avoid taxation." Plunkett v. Commissioner, supra. *102 A more difficult question relates to the year to which the income should be attributed. The reorganization giving rise to the increase in trust assets which led to the 1940 decree of distribution took place in 1937. If the income in question was then "currently distributable" to petitioner, it is obvious that it would not be taxable to him in 1940, the year now in issue. Internal Revenue Code, section 162 (b). And that would be so notwithstanding that he should have included it in his 1937 income and failed to do so. Ross v. Commissioner (C.C.A., 1st Cir.), 169 Fed. (2d) 483 (July 13, 1948). But to have compelled him to report and pay tax in 1937 upon income which the trustee might not distribute, and which the supervising court might permit it to withhold would be as inconsistent with applicable tax and accounting principles as to require an accrual of disputed items. See United States v. Safety Car Heating & Lighting Co., 297 U.S. 88. Jamaica Water Supply Co., 42 B.T.A. 359, affirmed (C.C.A., 2nd Cir.), 125 Fed. (2d) 512, certiorari denied, 316 U.S. 698. No such attempt could have succeeded. *103 It would have been doomed to frustration as an effort "To tax the petitioners upon income which can not be said to be 'distributable income' with finality and certainty as a matter of local law * * *." John Frederick Lewis, Jr., supra, 456. We must hold here, as we suggested there: "If * * * the trustees reimburse the petitioners for income which they have withheld * * * then, at such time, the petitioners will be subject to tax upon the income which respondent now attempts to tax them upon." Nor is it material, even if true, that the assets reecived by the trust may have represented income from a reorganization, not recognized as to it because of the provisions of section 112. In the Johnston case, supra, the full amount received by the life beneficiaries was held taxable to them, notwithstanding that the trust itself had sustained a loss on the transaction and "Although in reality there was no interest collected by the trusts and the amounts represented thereby did not represent taxable income to the trusts, * * *." It is frequently the case, and was so assumed continuously until 1942, that the current income of a trust might be less than the taxable distributions *104 to the beneficiaries. Mary deF. Harrison Geary, 9 T.C. 8. Not until that year was legislation adopted to cure the effect upon the beneficiary's tax liability, and this was expressly made nonretroactive to years prior to 1941. Internal Revenue Code, section 162 (d), enacted as section 111 (c) and (e), Revenue Act of 1942, and section 133 (a) and (b), Revenue Act of 1943. Petitioner, being entitled in 1940 to "currently distributable income" and having, in addition, received it, see Johnston, supra, 241, in the amount and during the year determined in the present deficiency, there seems no alternative but to treat it accordingly and subject it to corresponding taxation. Mary deF. Harrison Geary, supra.
Decision will be entered under Rule 50.