ESTATE OF MILDRED BRUCHMANN, FIRST NATIONAL BANK OF ROCK ISLAND, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5740–66. Filed December 18, 1969.

*Duane P. Benson*, for the petitioner.
*Sheldon S. Rosenfeld*, for the respondent.

TIETJENS, *Judge*: The respondent determined deficiencies in the income taxes of Mildred Bruchmann as follows:

| Taxable year | Deficiency | Taxable year | Deficiency |
|---|---|---|---|
| 1949 | $356. 00 | 1953 | $1, 491. 81 |
| 1950 | 1, 066. 85 | 1954 | 1, 243. 26 |
| 1951 | 937. 87 | 1955 | 1, 018. 36 |
| 1952 | 1, 230. 65 | | |

We must decide whether she was taxable in the years 1949 through 1955 on certain trust income which was not distributed until 1962, after a judicial determination that she was an income beneficiary of the trust. If we decide that she was, then we must decide whether certain expenses, allocable to the judicial determination and deducted by the trustee from its ultimate distribution, should reduce any trust income found to be includable in Mildred Bruchmann's gross income for the years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, First National Bank of Rock Island, administrator, had its address in Rock Island, Ill., at the time the petition was filed in this case. On August 28, 1964, it filed Federal income tax returns, using the cash receipts and disbursements method of accounting, on behalf of Mildred Bruchmann for the years 1949 through 1955, with the district director of internal revenue, Chicago, Ill.

Mildred Bruchmann, nee Ann Mildred Anderson, was legally adopted by Phillip Bruchmann and his wife Elizabeth on October 9, 1912. In 1949, Mildred Bruchmann was adjudicated an incompetent. In 1952, the petitioner was appointed conservator of her estate and acted in such capacity until her death on April 11, 1959. On or about

May 5, 1959, the petitioner was granted a letter of administration as administrator of the Estate of Mildred Bruchmann and is the duly qualified and presently acting administrator of the estate.

On July 21, 1922, John Brockman, hereinafter referred to as the settlor, an uncle of Phillip Bruchmann, established a trust with the Security Trust & Savings Bank of Los Angeles, Calif., the successor of which is hereinafter referred to as the trustee. The settlor reserved a life estate in the trust property and the right to revoke the trust during his lifetime. The settlor died on March 29, 1925.

Under the terms of the trust, after the settlor's death, the trust property was to be disposed of in various ways. Since we are only concerned with the disposition in trust of a portion of the trust property, we will hereinafter refer to such disposition in trust as the trust and the property subject to such trust as the trust property.

Upon the settlor's death, the trust property was to be held for 24 nieces and nephews of the settlor. Phillip Bruchmann was one of the nephew beneficiaries of the trust. The trustee was to pay the net income of the trust in equal shares to the nieces and nephews quarterly each year. Upon the death of a nephew, his share of the trust income was to be paid to his widow for as long as such widow remained alive and unmarried. Upon the death or remarriage of the widow, the nephew's share of the trust income was to be paid to his "issue." Upon the death of all of the nieces and nephews, the trust was to terminate and the corpus and all undistributed net income were to be distributed to the surviving "lawful issue of the bodies" of the nieces and nephews.

Phillip Bruchmann died on September 19, 1940, and was survived by his widow, Elizabeth Bruchmann, and his daughter, Mildred Bruchmann. Elizabeth Bruchmann died, not having remarried, on July 6, 1949, survived by Mildred Bruchmann. Except for one child who died in infancy, Phillip Bruchmann had no other children, either natural or adopted, except for Mildred Bruchmann.

In 1952, the trustee instituted suit in the Superior Court of the State of California, County of Los Angeles, for declaratory and other relief respecting the trust. One of the questions raised by the trustee was whether adopted children were to be considered as "issue" and "lawful issue of the body" for purposes of the trust. The petitioner, as conservator of the Estate of Mildred Bruchmann, filed an answer requesting the court to find in the affirmative with respect to the above question. The effect of such a finding would have been that Mildred Bruchmann was an income beneficiary of the trust and was capable of becoming a residuary beneficiary when all the nieces and nephews had died.

On July 13, 1956, the court entered its findings of fact and conclusions of law determining that, for purposes of the trust, adopted children should be considered as "issue" but not as "lawful issue of the

body." The effect of these holdings was to make Mildred Bruchmann an income beneficiary of the trust but to deny her any chance of becoming a residuary beneficiary.

During the years 1949 through 1955, the trustee impounded Mildred Bruchmann's distributive share of the trust income. The amounts impounded, computed without regard to certain expenses incident to the litigation, were as follows:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1949 | $3,031.89 | 1953 | $7,240.66 |
| 1950 | 6,606.60 | 1954 | 6,834.43 |
| 1951 | 5,448.01 | 1955 | 5,873.34 |
| 1952 | 6,240.02 | | |

In 1962, after the time for appeal in the California litigation expired, the trustee distributed $23,573.92 to the Estate of Mildred Bruchmann. This amount represented the income that accrued to Mildred Bruchmann from 1949 through 1955 of $41,274.95, less $17,701.03, which, in accordance with the court determination, was withheld by the trustee as her share of attorney and trustee fees and expenses incident to the litigation. All such fees and expenses were disbursed by the trustee in the years 1959 through 1962.

### OPINION

The principal issue for decision is whether Mildred Bruchmann was taxable in the years 1949 through 1955 on her share of the income earned by the trust in those years, even though it was not distributed by the trust until 1962.

Section 641(a) of the Internal Revenue Code of 1954,[1] provides in pertinent part:

(a) APPLICATION OF TAX.—The taxes imposed by this chapter on individuals shall apply to the taxable income of estates or of any kind of property held in trust, including—

(1) income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

(2) income which is to be distributed currently by the fiduciary to the beneficiaries, * * *

Section 651(a) provides:

(a) DEDUCTION.—In the case of any trust the terms of which—

(1) provide that all of its income is required to be distributed currently, and

(2) do not provide that any amounts are to be paid, permanently set aside, or used for the purposes specified in section 642(c) (relation to deduction for charitable, etc., purposes),

there shall be allowed as a deduction in computing the taxable income of the trust the amount of the income for the taxable year which is required to be distributed currently. * * *

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

Under section 652 "the amount of income for the taxable year required to be distributed currently by a trust described in section 651 shall be included in the gross income of the beneficiaries to whom the income is required to be distributed, whether distributed or not." Substantially similar provisions were included in the Internal Revenue Code of 1939.[2]

Section 641 makes clear that all the income of the trust is subject to taxation, including that which is accumulated and that which is currently distributable. Without doubt, the income of the trust which was set aside for Miss Bruchmann was includable in the trust's income under section 641. The real issue in the case is whether the tax burden on such income is to be borne by the trust or whether it can be shifted to the beneficiary, and the answer to that question depends upon whether the trust is entitled to a deduction for such income. The language of section 641 has no relevancy in answering that question. Rather, the answer depends upon whether such income is "required to be distributed currently" within the meaning of section 651. Manifestly the terms of the trust provide that all of its income is required to be distributed currently. There is no suggestion in this case that resort to local law for construction of the trust terms could result in any determination other than a finding that the income was required to be distributed currently, either to Mildred Bruchmann or to the other income beneficiaries. On the other hand, the trustee during the taxable years in question was uncertain as to whether Mildred Bruchmann was entitled to receive a share in the income or whether the other income beneficiaries were entitled to receive such share. Accordingly, under State law, until he could secure an interpretation of the trust instrument, the trustee could not be compelled to distribute the income either to Mildred Bruchmann or to the other income beneficiaries. Bogert, Trust and Trustees, sec. 814 (2d ed. 1962) ; 2 Scott, Trusts, sec.

---

[2] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust ;

(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct ;

\*          \*          \*          \*          \*          \*          \*

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*          \*          \*          \*          \*          \*          \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, \* \* \* but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. \* \* \*

182 (3d ed. 1967). See also *Feldmeier* v. *Superior Court*, 12 Cal. 2d 302, 83 P. 2d 929 (1938). Instead he impounded the income awaiting determination of Mildred Bruchmann's claim to it.

We hold the trust income was, nevertheless, "required to be distributed currently" within the meaning of section 651, entitling the trust to a deduction therefor, and within the meaning of section 652(a), causing the income to be taxable to the beneficiary (Mildred Bruchmann) to whom the income was required to be distributed. The statutory scheme we are dealing with is one for the allocation of the tax burden as between the trust on the one hand and its income beneficiaries on the other. It distinguishes between income which is to be distributed currently (whether distributed or not), on the one hand, and income which may be accumulated in trust on the other. This allocation may safely be made and the trust be shown entitled to the deduction provided by section 651 when the terms of the trust provide that all of its income is to be distributed currently and there is no provision for accumulation. That is the case we have before us. In fact the income in this case was impounded, awaiting actual distribution to the income beneficiaries entitled to receive it. The income was "out of the trust," and it seems reasonable that the trust should be allowed the deduction. At the same time, the statutory scheme clearly contemplates that the income is to be taxable to somebody in the years it is received. Section 652 taxes such income to the beneficiaries to whom it is required to be distributed, whether distributed or not. The subsequent determination of her claim established that Mildred Bruchmann was such a beneficiary. We hold the income was taxable to her in the years it was required to be distributed to her.

We think this conclusion is dictated by the holdings of *Mary Clark DeBrabant*, 34 B.T.A. 951 (1936), affd. 90 F. 2d 433 (C.A. 2, 1937); *Estate of Robert A. Dula*, 23 T.C. 646 (1955), affirmed sub nom. *Polt* v. *Commissioner*, 233 F. 2d 893 (C.A. 2, 1956); and *United States* v. *Higginson*, 238 F. 2d 439 (1956), which we follow. The reasoning of those cases is clear and can be gained from the reading. It need not be repeated here. See also *Robert F. Chapman*, 3 T.C. 708 (1944); *F. T. Bedford*, 2 T.C. 1189 (1943), affd. 150 F. 2d 341 (C.A. 2, 1945); *Thalia W. Malcom*, 36 B.T.A. 358 (1937), affd. 97 F. 2d 281 (C.A. 2, 1938); Rev. Rul. 62–147, 1962–2 C.B. 151.

On the secondary issue we hold that Mildred Bruchmann, a cash basis taxpayer, is not entitled to deductions during the taxable years 1949 through 1955 for the attorney and trustee fees and expenses incident to the litigation which were disbursed from the impounded income by the trustee in the years 1959 through 1962.

Reviewed by the Court.

*Decision will be entered for the respondent.*

FAY, *J.*, dissents.

RAUM, *J.*, dissenting: I agree with the conclusions in Judge Simpson's opinion in respect of the first issue, which are underscored by the dilemma with which the beneficiary would be faced annually at the time of filing her return during the long period of years when the matter of her right to trust income was in litigation. It seems highly unlikely to me that she was required by statute to guess at the future outcome of that litigation, and to report annually the income which was not in fact distributed to her at that time, and where her right thereto was open to serious doubt in the pending litigation. Cf. dissenting opinion of Friendly. *J.*, in *Commissioner* v. *Gordon*, 382 F. 2d 499, 510–511 (C.A. 2), reversed 391 U.S. 83.

In view of my conclusion as to the first issue I do not find it necessary to express any view as to the troublesome and highly doubtful second issue.

———

SIMPSON, *J.*, dissenting: I must disagree with the Court with respect to both issues involved in this case.

I am aware that the majority's conclusion as to the first issue is supported by prior decisions of this and other courts. *United States* v. *Higginson*, 238 F. 2d 439 (C.A. 1, 1956) ; *Estate of Robert L. Dula*, 23 T.C. 646 (1955), affirmed sub nom. *Polt* v. *Commissioner*, 233 F. 2d 893 (C.A. 2, 1956) ; *Robert F. Chapman*, 3 T.C. 708 (1944) ; *F. T. Bedford*, 2 T.C. 1189 (1943), affd. 150 F. 2d 341 (C.A. 2, 1945) ; *Thalia W. Malcom*, 36 B.T.A. 358 (1937), affd. 97 F. 2d 381 (C.A. 2, 1938). Although no judge should lightly cast aside the accumulated wisdom of precedent, it is also true, as stated by Justice Brandeis, that *"Stare decisis* is not, like the rule of *res judicata*, a universal, inexorable command." *Burnet* v. *Coronado Oil & Gas Co.*, 285 U.S. 393, 405 (1932). In my judgment, this case presents one of those situations in which the rule of stare decisis should not be applied.

In *Mary Clark DeBrabant*, 34 B.T.A. 951 (1936), affd. 90 F. 2d 433 (C.A. 2, 1937), Mrs. DeBrabant was the beneficiary of a trust and, under the trust instrument, was entitled to have trust income distributed to her currently. However, in 1930, the trustee withheld from her certain distributions which it received on corporate stock because it believed that such distributions constituted principal and not income. In 1933, Mrs. DeBrabant obtained an adjudication by the New Jersey courts that all of the distributions were income, and such income was thereupon distributed to her. Both the Board of Tax Appeals and the Court of Appeals for the Second Circuit held that all the income was taxable to Mrs. DeBrabant in 1930. The Second Circuit said at 90 F. 2d 435:

The question before us is whether the income received by the trustee in 1930, which the New Jersey Court of Chancery held to belong to the taxpayer, was:

"Income accumulated in trust for the benefit of * * * unascertained persons, * * * and income held for future distributions under the terms of the * * * trust," in which case it was taxable against the trustee, or whether it was "income * * * to be distributed currently by the fiduciary to the beneficiaries," in which case it was deductible by the trustee in its return but to be "included in computing the net income" of the beneficiary and taxable against her.

It seems evident that the income of any trust which under the terms of the trust instrument is made payable to a life beneficiary is "to be distributed currently by the fiduciary," but that it was to be thus distributed here is especially plain because of the direction in the trust deed that "all payments of income hereunder shall be made on the second days of January and July in each and every year." We are satisfied that the instrument specifically provides for current distributions of income and can nowhere find in it even a suggestion of an accumulation of income "for the benefit of * * * unascertained persons." The clause of section 161(a)(1) of the Revenue Act of 1928 (26 U.S.C.A. § 161 and note) which refers to accumulations of income for "unascertained persons" indicates the sort of persons contemplated when it uses the words "unborn" and "with contingent interests" to describe the class it has in mind. Thus under the rule of "ejusdem generis," as well as by reason of the almost inevitable meaning of the words "unascertained persons," reference is made to those whose identification depends on future contingencies rather than on a correct understanding of the application of the law to existing facts.

A careful examination of the reasoning in this case convinces me that there are several objections to the Court's conclusion.

The principal objection to the *DeBrabant* rule is that it is based upon an untenable interpretation of the statute. In *DeBrabant*, the trust instrument apparently made no express provision for the trustee to withhold income when he was in doubt as to whether a beneficiary was entitled to it, and the court appears to have based its decision on the lack of such a provision in the trust instrument. However, section 1.651(a)–2, Income Tax Regs., provides in part: "The determination of whether trust income is required to be distributed currently depends upon the terms of the trust instrument and the applicable local law." Almost identical language appears in the committee reports accompanying the enactment of section 651, and those reports indicate that such rule is merely the continuation of the rule previously established. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 61, A196 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 84, 345 (1954); *Smith's Estate* v. *Commissioner*, 168 F. 2d 431 (C.A. 6, 1948); *Hale* v. *Anglim*, 140 F. 2d 235 (C.A. 9, 1944); *Letts* v. *Commissioner*, 84 F. 2d 760 (C.A. 9, 1936); *Horace Greeley Hill, Jr.*, 24 T.C. 1133 (1955).

Under local law, when a trustee, acting in good faith, is uncertain as to whether a beneficiary is entitled to income, he may seek an interpretation of the governing trust instrument, and until he secures such an interpretation, he is not required to distribute the income. Such actions on his part are consistent with his fiduciary responsibility, and

no penalty will be imposed upon him for his failure to distribute the income in controversy. Bogert, Trust and Trustees, sec. 814 (2d ed. 1962); 2 Scott, Trusts, sec. 182 (3d ed. 1967). See also *Feldmeier* v. *Superior Court*, 12 Cal. 2d 302, 83 P. 2d 929 (1938). Thus, although the Brockman trust instrument included no express authorization for the trustee to withhold income, it was, as a matter of local law, not required to distribute the income to Miss Bruchmann during the years 1949 through 1955. Her right to the income during those years was no greater than what it would have been had the trust instrument expressly authorized the trustee to accumulate the income under these circumstances. In my opinion, the *DeBrabant* holding is inconsistent with the statute in failing to inquire into local law and in failing to recognize that the trustee was not required to distribute the income.

In *Horace Greeley Hill, Jr., supra*, this Court did consider the effect of local law. We said at page 1138:

> In order that income be currently distributable within the meaning of section 162(b), the person or persons to whom such income is so distributable must have a present, enforceable, vested right to such income. * * * This right must be clear, and not subject to any condition as to its enforceability. The mere right to apply to a court of competent jurisdiction to compel distribution, where it is possible, but not clear, that such application would be granted, is not equivalent to a present enforceable right.* * *

Clearly, Miss Bruchmann had no such enforceable right. During the years 1949 through 1955, she had merely a hope that the trust instrument would be construed so as to include her as an income beneficiary. However, there existed the possibility that the term "issue" might be construed to exclude adopted children, and in that event, she would receive none of the trust income. Hence, it is anomalous to say that the trust income was required to be distributed to her in the years in issue.

Another criticism of the *DeBrabant* holding is that it rests in part upon an unsound application of language contained in *Freuler* v. *Helvering*, 291 U.S. 35, 42 (1934). In *Freuler*, the Supreme Court said that "The test of taxability to the beneficiary is not receipt of income, but the present right to receive it," and this statement was relied upon by *DeBrabant* to tax the beneficiary on income which she had not received. However, in *Freuler*, the beneficiaries had received more than they were entitled to, and the question was whether they were taxable on the entire amount that they had in hand, or only on the amount to which they were entitled. The Court held that the tax was limited to the amount to which they were entitled.

Although the language quoted from *Freuler* appears to apply to the *DeBrabant* problem, the issues are significantly different. The language was used to justify taxing beneficiaries on only that income received

by them to which they had a right; it is not at all clear that the Supreme Court would have applied the same test to a beneficiary who claimed a right but who possessed nothing.

For the beneficiary, the *DeBrabant* rule results in tax consequences that are inconsistent with general principles of taxation. Under *DeBrabant*, a beneficiary is taxed because he has a so-called right, although in fact all that he has is a mere claim to income. His claim is quite different than the fixed right which is taxable to a taxpayer using the accrual method of accounting. See secs. 1.446–1(c)(1)(ii), 1.451–1(a), Income Tax Regs.; *Boston Elevated Railway Co.*, 16 T.C. 1084, 1104–1105 (1951), affd. 196 F. 2d 923 (C.A. 1, 1952); *Cold Metal Process Co.*, 17 T.C. 916, 932 (1951). Nor is the beneficiary like a taxpayer who has received a corporate distribution which may be a taxable dividend or a nontaxable return of capital. See *Lou Levy*, 30 T.C. 1315, 1328 (1958). Such a taxpayer has something in hand which may be taxable in some manner, but the beneficiary has received nothing.

Nor can the *DeBrabant* rule be justified as the most workable interpretation of the statute; on the contrary, it results in administrative problems for the beneficiary, the trustee, and the Government. While the right to the income is being adjudicated, the taxable years of the beneficiary and the trust may be kept open so that appropriate adjustments may be made when the litigation is concluded, but that course may postpone for a number of years the final accounting for the years to which the income is attributable and subject to the beneficiary and the trust to liability for interest on underpayments of tax. On the other hand, the trustee and the beneficiary must act at their peril, if they act without awaiting the final settlement of the controversy. In addition, this case illustrates well the plight of a beneficiary who seeks to follow *DeBrabant*. If Miss Bruchmann's share of the income had been reported each year, with what was the tax to be paid? During the years 1949 through 1955, all that she had was a hope that the court would eventually determine that she was entitled to a share of the trust income, but it is doubtful that the respondent would accept that hope as currency for the payment of the tax.

Although this Court has followed *DeBrabant*, it has narrowly restricted its applicability. Prior to *DeBrabant*, it was held that a claimant was not taxable on income which was withheld from him pending an adjudication of his right to it. *Ferguson v. Forstmann*, 25 F. 2d 47 (C.A. 3, 1928); *Commissioner v. Owens*, 78 F. 2d 768 (C.A. 10, 1935). *DeBrabant* distinguished such cases on the basis that they did not involve express trusts. Cases arising after *DeBrabant* have not applied its holding when the years in which the income was earned were closed by the statute of limitations, when an estate rather than a trust was involved, and when the beneficiary was unaware of his claim to the

income. *Mary DeF. Harrison Geary*, 9 T.C. 8 (1947); *Horace Greeley Hill, Jr., supra; Ralph E. Hedges*, 18 T.C. 681 (1952), affirmed per curiam 212 F. 2d 593 (C.A. 9, 1954). See also Surrey & Warren, Federal Income Taxation 901–902 (1962); Moore & Sorlien, "Homeless Income," 8 Tax L. Rev. 425 (1953). There are no sound reasons for distinguishing these cases from *DeBrabant*. It is difficult to see how the existence, or nonexistence, of an express trust should affect the taxability of a claimant to income which is withheld from him because of a dispute over his right to it. Nor is there any reason for applying a different rule when the statute of limitations has run, or when an estate is involved (since the same statutory provisions are applicable to estates and trusts), or when the claimant is unaware of his rights to the income. The reluctance to apply the *DeBrabant* rule more broadly must reflect an inherent dissatisfaction with the consequences of such rule.

Although I am reluctant to disagree with the earlier decisions of this and other courts, I am convinced that on this occasion, we should decline to follow those decisions. For us to apply such rule once more would merely breathe additional life into a rule that lacks justification and would compound the difficulty of bringing about its demise. The objections to the *DeBrabant* rule lead me to conclude that it is clearly wrong. In addition, the impracticability of the rule has frequently led to its challenge by both taxpayers and the respondent; the courts, for their part, have drawn questionable distinctions in order to avoid having to apply the rule. See, e.g., *United States* v. *Higginson, supra; Estate of Robert L. Dula, supra; Mary DeF. Harrison Geary, supra;* Rev. Rul. 62–147, 1962–2 C.B. 151; I.T. 1733, II–2 C.B. 169 (1923). Thus, the *DeBrabant* holding, despite the time that has passed, has not succeeded in settling the controversy. In these circumstances, I believe that we should recognize *DeBrabant* to be a mistake made by the courts, which can and should be corrected by the courts. See Final Report on Estates, Trusts, Beneficiaries, and Decedents from the Advisory Group on Subchapter J of the Internal Revenue Code of 1954, p. 41 (1958).

I also disagree with the Court's conclusion with respect to the second issue. Section 451, relating to the general rule for the year of the inclusion of income, and section 461, relating to the general rule for the year of deductions, and the cases of *American Automobile Assn.* v. *United States*, 367 U.S. 687 (1961), and *Schlude* v. *Commissioner*, 372 U.S. 128 (1963), are all applicable in determining the year in which the trust should report the income which it receives and the year in which the trust may deduct its expenses. However, those rules are not applicable in determining what income is taxable to the beneficiary of a trust.

Section 643 (b) provides:

For purposes of this subpart and subparts B, C, and D, the term "income", when not preceded by the words "taxable", "distributable net", "undistributed net", or "gross", means the amount of income of the estate or trust for the taxable year determined under the terms of the governing instrument and applicable local law. * * *

This definition of "income" is applicable in determining what income is deductible by the trust under section 651 and what income is taxable to the beneficiary under section 652. The effect of the definition is that the trust may deduct what is popularly known as "trust income," and it is the "trust income" that is taxable to the beneficiary.

In *Central Hanover Bank & Trust Co.*, 34 B.T.A. 741 (1936), the Court said at page 743:

Where the trust instrument provides for payment of expenses, taxes, and other charges, it is not until after provision therefor is made by the trustee that he can determine the amount of income currently distributable. * * *

In *Edith M. Bryant*, 14 T.C. 127 (1950), this Court held that in determining the distributable income of a trust for 1943, the taxes and trustee fees attributable to such year should be taken into consideration, although the trust used the cash method of accounting and such expenses were not paid until the subsequent year. In *McCrory* v. *Commissioner*, 69 F. 2d 688 (C.A. 5, 1934), the trust instrument provided that reserves for estimated expenses should be established, and the court held that the funds which should have been set aside in 1924 to meet estimated expenses were not a part of the income currently distributable for that year.

In this case, the trust instrument directed the trustee to distribute "net income," and it was only the "net income" that was distributed to the Estate of Miss Bruchmann. From the amounts that had been credited to her account, the trustee, in accordance with the California court judgment, subtracted the expenses allocable to such account. No reserves were actually established in this case, because the income was impounded during the years of the dispute, and not distributed. Nevertheless, the result is substantially the same as if the amounts that were credited to Miss Bruchmann's account in the years 1949 through 1955 had been reduced by the amount of the estimated expenses of litigation. Only the "net income" was deductible by the trust as a distribution, and in my opinion, only that amount should be taxable to the beneficiary. To carry out the Court's conclusion with respect to the first issue, the amount taxable in each of the years 1949 through 1955 might be determined by allocating the amount actually distributed in 1962 to each year in proportion to the total amounts credited to her account for such years.

FORRESTER, DAWSON, and TANNENWALD, *JJ.*, agree with this dissent.