Ila B. Mann v. Commissioner.
Mann v. Commissioner
Docket No. 2799-62.
United States Tax Court
T.C. Memo 1965-161; 1965 Tax Ct. Memo LEXIS 169; 24 T.C.M. (CCH) 855; T.C.M. (RIA) 65161; June 17, 1965
*169 Expenses incurred by the life beneficiary of a trust, held, deductible as to certain attorney and other fees paid, but not deductible as to amounts not sufficiently substantiated nor shown to have been ordinary and necessary for and reasonably and proximately related to the production and collection of income. Selig Kaplan, 16 Court St., New York, N. Y., for the petitioner. Eugene Parker and Robert A. Trevisani, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioner's income tax in the amount of $2,157.37 for the calendar year 1957. Petitioner assigns error in respondent's disallowance of a claimed deduction in the amount of $4,146.71 alleged to *170 represent legal fees and other expenses incurred to prevent waste of corporate earnings and increase dividend income from shares of stock held in a trust of which petitioner was the life beneficiary. Findings of Fact Petitioner, Ila B. Mann, resided at 205 West 57th Street, New York, N. Y. She filed her individual income tax return for the year 1957, with the district director of internal revenue, Upper Manhattan District, New York. Petitioner is the widow of Jacob U. Manischewitz, who died testate in April 1946. The latter's will devised and bequeathed all of his shares of stock of The B. Manischewitz Company to the Central Hanover Bank and Trust Company (hereinafter referred to as the trustee) in trust, inter alia, to pay the net income therefrom to his wife, Ila, during her lifetime. During the year 1957 the trustee held 9,442 shares of stock of The B. Manischewitz Company (hereinafter referred to as the company). The trust income distributable to petitioner was paid semiannually by the trustee's check mailed to petitioner's bank for deposit to her individual account. From 1946 to 1957 petitioner never requested nor received a trustee's annual accounting and prior to about *171 1954 petitioner never inquired of the trustee as to the business affairs of the company, which was primarily a family owned and operated company. In or about 1954 a vice president of the company told petitioner that it should be paying larger dividends. Petitioner thereupon made inquiries of the trustee's trust officer as to the affairs of the company, but received no information. She was rather patronizingly treated and, in effect, told not to meddle in the trustee's affairs. Petitioner then had a friend, who was a lawyer, call on the trust officer to discuss the operations of the company, but again he was given the brush-off and the only information he obtained was that the company's business was "in great shape." The next time petitioner took an active interest in the affairs of the company was in 1957 when a nephew, who was employed by the company, informed her that she should be receiving larger dividends. Petitioner thereupon telephoned the company's president, her stepson, for the purpose of seeking information about the company, but to no avail. In 1957 petitioner decided to engage legal counsel to discuss matters with the trustee and ascertain the facts concerning certain *172 alleged waste and mismanagement in the affairs of the company and for the purpose of protecting and increasing the dividends on the company's stock. During 1957 petitioner engaged three lawyers at different times for that purpose. The first lawyer, Lawrence Segal, had interviews and correspondence with the trustee regarding the company's affairs, but he had to withdraw from the case. The second lawyer, Allan Rubin, rendered similar services, had considerable correspondence with the trustee, and also obtained an accounting by the trustee. The third lawyer, Stanley Kaufman, rendered similar services in efforts to obtain more specific information about the business and operations of the company and he accompanied petitioner to the stockholders' meeting in Cincinnati in November 1957. Also, during 1957, petitioner engaged the services of two business investigators, Leon and Dahlberg, to obtain information as to certain distributors of the company and particularly with reference to certain members of the Manischewitz family who allegedly received salaries without actually rendering any services to the company. During 1957 petitioner paid fees for the services performed by lawyers and *173 business investigators, in the amounts as follows: Paid to
Fees
Segal
$ 100.00
Rubin
666.66
Kaufman
1,581.35
Leon
250.00
Dahlberg
115.00
$2,713.01
In addition to the above-mentioned fees and during 1957, petitioner expended money for various other expenses incurred in the pursuit of her activities with respect to the company. Such expenditures included plane fare and expenses of a nephew for a trip to California for an interview with a relative, another stockholder of the company; expense for petitioner and Kaufman to attend the stockholders' meeting in Cincinnati late in 1957; entertainment of stockholders at her New York apartment and at Cincinnati; printing of letters to stockholders; services of a typist; services of her daughter to type and to interview people while petitioner was sick; and numerous long distance telephone calls to unidentified parties in connection with company matters. Petitioner has never engaged in business and did not seek to become an officer or director of the company. She was primarily interested in dividends, as life beneficiary of the trust. She had no interest in the principal of the trust and would never acquire such *174 an interest as long as the stock in the company was held. Only in the event that less than $1 per share was paid annually on The B. Manischewitz Company stock could such stock be sold by the trustee, and only in such event could petitioner ever receive any principal distribution. After petitioner engaged lawyers as above mentioned and pursued her inquiries and investigations, the dividend rate of the company was increased in 1957 by 25 cents per share. Increased dividends were paid at least for several years thereafter. Petitioner's lawyer, Kaufman, suggested the possibility of a lawsuit. A New Jersey law firm was retained and in 1958 filed a stockholders' derivative suit. Petitioner and several other stockholders were plaintiffs and the suit was brought against the company and certain corporate officers, in the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C 1695-57. That suit sought damages, a complete accounting and examination of the books and records of the company and of the individual defendants, an accounting by the individual defendants for monies taken by them from the company, and an order restraining the individual defendants from continuing *175 the wrongs alleged in the complaint. In 1959 the said suit was dismissed pursuant to compromise and a stipulation of settlement. None of the fees paid in 1957 which petitioner seeks to deduct were in connection with that action, but perhaps some of the information developed in 1957 was used as a basis for the action in New Jersey. On her income tax return for 1957, petitioner claimed an itemized deduction in the amount of $4,146.71 as "Cost of Proxy Fight Resulting in Increased Income." In looking over and signing the return, as prepared by her accountant, petitioner did not notice the above phraseology describing the claimed deduction and as of that time was not aware of the exact meaning of the words, "proxy fight." In the statement of adjustment and explanation thereof, attached to the notice of deficiency, the claimed deduction of $4,146.71 was "disallowed for lack of substantiation, and for the further reason that the item is not deductible under any provisions of the Internal Revenue Code." We find that during 1957 petitioner expended the total sum of $2,713.01 in fees paid for the services of lawyers and business investigators which were ordinary and necessary and were *176 reasonably and proximately related to the production or collection of taxable income. We further find that certain other expenditures hereinabove referred to were not sufficiently substantiated as to the amounts paid, nor shown to have been ordinary and necessary for and reasonably and proximately related to the production or collection of taxable income. Opinion Petitioner contends that she is entitled to a deduction of the entire amount of $4,146.71 as claimed on her return for 1957, pursuant to section 212 of the Internal Revenue Code of 1954. [1] Petitioner argues that the description of the expenditures as used on her return, that is, "cost of a proxy fight," was clearly a misnomer used by her accountant because there was no effort, intent or purpose of petitioner to seek proxies to gain control of The B. Manischewitz Company or to be elected an officer or director thereof. Petitioner contends that her sole purpose in engaging the services of lawyers and others and in incurring the other expenditures was to convince the trustee that her income from the testamentary trust should be increased and to investigate the conduct of the business of the company *177 and terminate certain alleged wasteful practices, thereby increasing the dividends on shares of stock held in trust for her benefit. Further, petitioner contends that under the facts of record the total amount of $4,146.71 expended in the taxable year 1957, was "for the production or collection of income" and therefore deductible in full under section 212(1), supra. Respondent contends that none of the expenses in controversy were ordinary and necessary and, also, reasonably and proximately related to the production or collection of income to petitioner as required by section 212(1), supra, and Regs. 1.212-1(d), so as to be deductible as nontrade or business expenses. Respondent contends that petitioner incurred expenses on behalf of the corporation in connection with a stockholders' derivative suit brought in a *178 subsequent year. The record does not support this conclusion and we have made a factual determination to the contrary. Respondent does not dispute the amount claimed as paid to petitioner's lawyers and business investigators, but he does contend that the remainder of petitioner's claimed expenditures should not under any circumstances be allowed as a deduction pursuant to section 212, supra. Upon our consideration of the record herein, we have concluded and found as a fact that petitioner's expenditures in the total amount of $2,713.01 in fees paid for the services of lawyers and business investigators were not paid in connection with the subsequently filed stockholders' action and were ordinary and necessary and reasonably and proximately related to the production or collection of taxable income. Respondent does not suggest and the record does not support any motive petitioner might have had save to obtain an increase in the dividend yield from the Manischewitz stock held in trust for her benefit. Accordingly, we hold that such amount is an allowable deduction for 1957, pursuant to section 212, supra, and that respondent erred in his disallowance of such deduction. Cf. Bingham's Trust v. Commissioner of Internal Revenue, 325 U.S. 365 (1945); *179 Mary deF. Harrison Geary, 9 T.C. 8, 14-15 (1947); Nancy Reynolds Bagley, 8 T.C. 130 (1947); and Stella Elkins Tyler, 6 T.C. 135 (1946). With respect to the remainder of petitioner's expenditures during 1957, which are briefly referred to in our findings of fact without setting forth the alleged amounts involved, we have concluded and found as a fact that petitioner has failed to sufficiently substantiate the amounts claimed to have been paid or to establish that they were ordinary and necessary for and reasonably and proximately related to the production or collection of taxable income. As to the amounts involved, petitioner relied upon her recollection and in some instances approximation. She produced no substantiation for her somewhat vague and inexact recollection. The purpose of those expenditures is indefinite. Certain expenses were for petitioner's personal attendance at a stockholders' meeting; others were either to or for relatives and appear to be remotely connected with any effort to either produce or collect income. Still others were to seek the enlistment of aid from other stockholders by urging them to attend the Cincinnati stockholders' *180 meeting and ask the company's officers questions as to its operations. Such expenditures were personal, and petitioner has not carried her burden to establish that they were made with the purpose and reasonable expectation that income would flow directly therefrom to her. Bertie Charles Forbes, 18 T.C. 321 (1952), affirmed 204 F. 2d 777 (C.A. 2, 1953). Cf. Rev. Rul. 56-511, 1956-2 C.B. 170. We sustain respondent's disallowance of the claimed deduction with respect to such expenditures in the total amount of $1,433.70 Decision will be entered under Rule 50. Footnotes
1. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or * * *↩